UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CORONACIDE, LLC,**

    **Plaintiff,**

**CASE NO.:**

v.

**WELLNESS MATRIX GROUP, INC., and GEORGE TODT,**

    **Defendants.**

_____/

<u>**VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL**</u>
**(Injunctive Relief Sought)**

Plaintiff, CoronaCide, LLC ("CoronaCide"), sues Defendants, Wellness Matrix Group, Inc. ("WM Group") and George Todt ("Todt"), and alleges as follows:

<u>**Nature of the Case**</u>

1. CoronaCide brings this action against Defendants because Defendants are falsely and deceptively advertising and offering for sale CoronaCide's COVID-19 test kits to the public during a worldwide COVID-19 pandemic and national emergency.

2. In fact, Defendants have no CoronaCide COVID-19 test kits. CoronaCide has no relationship with the Defendants, has never sold any of its CoronaCide COVID-19 test kits to the Defendants, and has never authorized the Defendants to use any of CoronaCide's information or intellectual property relating to CoronaCide's COVID-19 test kits.

3. Yet, the Defendants have posted and continue to maintain altered images of CoronaCide's COVID-19 test kits on their websites, continue to represent to the public that

WM Group is offering them for sale, and are infringing CoronaCide's trademark to mislead the public and are using CoronaCide's technical and clinical trial results information (which are unique to CoronaCide test kits) to sell test kits unknown to CoronaCide.

4. Defendants actions described in this Complaint has caused and will continue to damage CoronaCide's efforts to provide efficacious test kits to combat the COVID-19 pandemic and help re-start the economy.

5. CoronaCide seeks preliminary and permanent injunctive relief, other equitable relief, damages, costs, expert fees, and attorneys' fees resulting from the Defendants' unfair competition, trademark infringement, false advertising, and deceptive and unfair trade practices in violation of Section 43(a) of the Lanham Trademark Act, 15 U.S.C. §1125(a) (the "Lanham Act"), and Florida's Deceptive and Unfair Trade Practices Act, Section 501.201 *et seq.*, Florida Statutes.

## **The Parties**

6. Plaintiff, CoronaCide, is a Florida limited liability company, with a primary office located in Tampa, Florida. CoronaCide is the exclusive importer and distributor of the CoronaCide COVID-19 IgM/IgG Rapid Tests (the "CoronaCide Test Kits") in the United States.

7. Defendant, WM Group, is a Nevada corporation with its principal place of business in Huntington Beach, California. Defendant, WM Group was formerly known as Fuhuiyuan International Holdings, Limited.

8. Defendant, George Todt is a resident of Malibu, California. Todt directly communicated with CoronaCide regarding WM Group's attempted purchase of CoronaCide

Test Kits and, upon information and belief, Todt is the individual who registered the www.cs-28.com website and www.stopcorona28.com website (the "Defendants' Websites") used by WM Group to deceptively, falsely, and without any authorization from CoronaCide, advertise and market CoronaCide Test Kits (or counterfeits thereof) and the individual who otherwise controlled and directed the posting of content on Defendants' Websites.

## Jurisdiction And Venue

9. This Court possesses subject matter jurisdiction over this case under 28 U.S.C. §1331 because this is an action by under the Lanham Act.

10. This Court possesses subject matter jurisdiction over CoronaCide's related state law claim pursuant to 28 U.S.C. § 1367.

11. This Court possesses personal jurisdiction over Defendant WM Group because WM Group has caused harm to CoronaCide, which is based in Tampa, Florida, by deceptively and falsely advertising and offering for sale CoronaCide Test Kits through Defendants' Website, infringing CoronaCide's trademarks, and engaging in unfair competition in violation of the Lanham Act and Florida's Unfair and Deceptive Trade Practices Act.

12. This Court possesses personal jurisdiction over Todt because, upon information and belief, Todt has controlled and directed the actions of WM Group described in this Complaint, which actions caused harm to CoronaCide's operations based in Tampa, Florida, in violation of the Lanham Act and Florida's Unfair and Deceptive Trade Practices Act.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(1) and (2) because a substantial part of the events giving rise to the claims asserted in this Complaint occurred in this judicial district.

**Factual Background Common To All Counts**

14. The CoronaCide Test Kits detect IgG and IgM antibodies to SARS-CoV-2 in human blood. In simple terms, CoronaCide Test Kits use a blood sample to detect the presence of antibodies relating to the COVID-19 virus.

15. The United States Food & Drug Administration ("FDA") has authorized CoronaCide to distribute the CoronaCide Test Kits to any licensed healthcare practitioner in the United States for diagnostic use while CoronaCide awaits a final decision on its FDA Emergency Use Application ("EUA"). The FDA has accepted and preliminarily reviewed CoronaCide's EUA and assigned the Coronacide IgG/IgM Test Kit an FDA Listing Number, PEUA200124.

16. The process of filing the EUA and seeking FDA review and approval of the CoronaCide Test Kits, to date, has exceeded $100,000.00.

17. CoronaCide does not market, sell, or distribute the CoronaCide Test Kits for at-home use.

18. CoronaCide markets, offers to distribute, and sells its CoronaCide Test Kits to medical distribution companies, hospitals, city and state governments who will assure that they are used at point of care as required by FDA Guidance for this type of antibody test kit.

19. CoronaCide advertises its CoronaCide Test Kits on its website, www.coronacide.com, (the "CoronaCide Website). A copy of the content of the CoronaCide Website is attached as Exhibit A.

20. Defendant's representative, Todt, contacted CoronaCide in February 2020 and expressed an interest in WM Group purchasing CoronaCide Test Kits and even sent CoronaCide a purchase order from WM Group for CoronaCide Test Kits.

21. CoronaCide became suspicious and investigated Todt and WM Group. CoronaCide learned that Todt had been repeatedly sued for fraud, including by the United States Securities and Exchange Commission. Upon learning this information, CoronaCide decided to not engage in business with Defendants.

22. CoronaCide then expressly rejected and never accepted the Defendant's purchase order for CoronaCide Test Kits.

23. Despite the fact that CoronaCide is the sole source for CoronaCide Test Kits in the United States, and despite the fact that CoronaCide expressly rejected the only purchase order WM Group ever sent to CoronaCide for CoronaCide Test Kits, WM Group began offering CoronaCide Test Kits to the public through the Defendants' Website.

24. Defendants Websites prominently, but without the authorization or consent of CoronaCide, have displayed and continue to display the CoronaCide™ Trademark.

25. The content of Defendants' Websites is composed almost entirely of text and images taken from CoronaCide's materials for the CoronaCide Test Kits, including:

    a. an altered image of a CoronaCide Test Kit (the "Defendants' Altered Test Kit Image") prominently displayed at the top of the Defendants' Website's "Home" pages;

    b. the term "COVID-19 IgM/IgG Rapid Test", the verbatim text used by CoronaCide to describe its CoronaCide Test Kits;

    c. the FDA's "PEUA200124" number, making it appear as an FDA approval number when Defendants are well aware that this is simply the

5

application n umber assigned by the FDA to CoronaCide's EUA when it was filed with the FDA;

d. the statement: "**Test Accuracy:** IgG – 99.6%     IgM – 97.8%", the precise accuracy statistics for the CoronaCide Test listed on the CoronaCide Website and unique to and only applicable to test kits manufactured and distributed by CoronaCide;

e. a copy of the "Advantages" section of the brochure for the CoronaCide Test Kits (the "CoronaCide Brochure"), which brochure is displayed on the CoronaCide Website. (A copy of the CoronaCide Brochure is attached as Exhibit B);

f. under the heading "Instructions", a copy of graphics taken from the "Directions for Use" portion of the product insert for the CoronaCide Test Kits (the "CoronaCide Product Insert"), which product insert is displayed on the CoronaCide Website. (A copy of the CoronaCide Product Insert is attached as Exhibit C);

g. a copy of the "Procedure" portion of the CoronaCide Brochure;

h. a copy of the "COVID-19 Test Comparison" section of the CoronaCide Website;

i. a copy of the "materials" section of the CoronaCide Product Insert;

j. a photo showing the contents of a CoronaCide Test Kit, which photo is identical to that shown on the CoronaCide Website; and

k. a copy of a portion of CoronaCide's Product Insert showing study results, which results are only for the test kits manufactured specifically for CoronaCide and to no other test kits, under a section of Defendants' websites titled "Clinical Study Results".

A copy of the content of Defendants' Website www.stopcorona28.com as it appeared on March 27, 2020, is attached as Exhibit D. A copy of the content of Defendants' Website www.cs-28.com as it appeared on April 7, 2020, is attached as Exhibit E.

26. Defendants' Websites further contain an altered copy of the CoronaCide Brochure ("Defendants' Altered Brochure") with the CoronaCide™ Trademark replaced with

"CoronaStop 28" and with "StopCorona28.com" added and prominently displayed. A copy of Defendants' Altered Brochure is attached as Exhibit F.

27. Defendants' Websites also contain an altered copy of the CoronaCide Product Insert ("Defendants' Altered Product Insert") with the CoronaCide™ Trademark removed and replaced with the term "At-Home". A copy of Defendants' Altered Product Insert is attached as Exhibit G.

28. Upon information and belief, Defendants also previously displayed the CoronaCide™ Trademark and posted some or all of the elements listed in paragraphs 22 through 24 above (collectively, "Defendants' Deceptive CoronaCide Content") at other websites, including www.wellnessmatrixgroup.com, which website has since been deactivated.

29. A representative of Defendant WM Group sent out a "tweet" on his Twitter™ account on March 23, 2020, stating that "It is with great pleasure to announce the rollout of #coronavirus at home testing kits" and posting a copy of the altered CoronaCide Test Kit photo that appears on Defendants' Websites. A copy of that since-deleted "tweet" is attached as Exhibit H.

30. On March 30, 2020, the United States House of Representatives, Committee on Oversight and Reform, Subcommittee on Economic and Consumer Policy, sent a letter to WM Group requesting information on WM Group's "coronavirus-related products, particularly the CoronaCide COVID-19 IgM /IgG Rapid Test, which your company claimed can be performed 'in the home or at the bedside". A copy of that letter is attached as Exhibit I.

31. News outlets have published reports regarding Defendants' nefarious activities. For example, an April 2, 2020, news report by National Public Radio ("NPR") on its website www.npr.org prominently displays a copy of Defendants' Altered Test Kit Image, which was captured from Defendants' www.stopcorona28.com website and which image displays the CoronaCide™ Trademark. A copy of that NPR article is attached as Exhibit J.

32. Defendants have at all times been, and are now, well aware that they have not purchased and do not have CoronaCide Test Kits available for sale or distribution and that they are not authorized to use:

    a. the CoronaCide™ Trademark;

    b. any content from the CoronaCide Website;

    c. altered content from the CoronaCide Website; or

    d. the FDA's "PEUA200124" number issued for CoronaCide's Test Kits.

33. Upon information and belief, at all times material to this Complaint, Defendants are further aware that the CoronaCide Test Kits are not to be used for "at-home" testing, but are only to be used by medical professionals at the point of care.

34. Upon information and belief, Defendants have deliberately, intentionally, willfully, and in bad faith used the CoronaCide™ Trademark and the Defendants' Deceptive CoronaCide Content in order to:

    a. benefit from the reputation and goodwill that CoronaCide developed the CoronaCide Test Kits;

    b. cause confusion in the marketplace COVID-19 test kits;

    c. deceive and mislead the public and potential customers into believing that Defendants' are selling CoronaCide Test Kits; and

    d. deceive and mislead the public and potential customers into believing that Defendants' and their activities are sponsored by, or affiliated with, CoronaCide.

35. Upon information and belief, Defendants' use of the CoronaCide™ Trademark and the Defendants' Deceptive CoronaCide Content will continue unless and until enjoined by this Court. Beginning in late March of 2020 CoronaCide repeatedly demanded that Defendants that cease use of the CoronaCide Trademarks, name, and materials from all their websites. Yet, Defendants have not done so.

36. As a direct and proximate result of Defendants' conduct, CoronaCide has suffered irreparable injury to its business including harm to its goodwill and reputation, and damages, and is likely to suffer continued irreparable injury and damages unless the Defendants' use of the CoronaCide™ Trademark and the Defendants' Deceptive CoronaCide Content are enjoined by this Court.

37. CoronaCide has no adequate remedy at law to prevent the injuries caused by the continuing unlawful conduct of Defendants.

38. Given the clear, deliberate, and willful violation of CoronaCide's rights by Defendants, CoronaCide will likely prevail on the merits of this action.

39. The balance of the hardships and the public interest require that Defendants immediately cease their use of the CoronaCide™ Trademark and the Defendants' Deceptive CoronaCide Content.

40. CoronaCide retained the law firms of Fee & Jeffries, P.A. and Smith & Hopen, P.A. to protect and vindicate its rights against the Defendants unlawful acts described above and is obligated to pay those law firms reasonable attorneys' fees for their services.

41. All conditions precedent to the maintenance of this action have been performed or have been excused or waived.

## COUNT I
### Federal Unfair Competition Under 15 U.S.C. §1125 (a)

42. CoronaCide realleges and incorporates by reference the allegations in paragraphs 1 through 41 above.

43. Defendants, through their use of the CoronaCide™ Trademark and the Defendants' Deceptive CoronaCide Content, have without authorization, in connection with advertising and marketing their purported goods and/or services in interstate commerce, made or contributed to the making of false designations of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact, which are likely to cause confusion, mistake, or to deceive as to the affiliation, connection or association of Defendants with CoronaCide, and/or as to the origin, sponsorship, or approval of Defendants' goods and/or services, in violation of Section 43 (a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

44. The consuming public exposed to Defendants' use of the CoronaCide™ Trademark and the Defendants' Deceptive CoronaCide Content are likely to believe that Defendants are affiliated, connected, or associated with CoronaCide, resulting in a loss of goodwill to CoronaCide.

45. Some members of the consuming public exposed to Defendants' use of the CoronaCide™ Trademark and the Defendants' Deceptive CoronaCide Content are also likely to believe that they can purchase CoronaCide Test Kits from Defendants, when in fact they cannot, resulting in a loss of goodwill to CoronaCide and harm to CoronaCide's reputation.

46. Defendants' use of the CoronaCide™ Trademark and the Defendants' Deceptive CoronaCide Content constitute unfair competition in violation of the Lanham Act.

47. CoronaCide has suffered and continues to suffer damages as a result of the Defendants' unfair competition in violation of the Lanham Act.

WHEREFORE, CoronaCide respectfully requests this Court to:

A. Enter judgment in favor of CoronaCide that Defendants engaged in unfair competition in violation of Section 43(a) of the Lanham Act;

B. Enter judgment that Defendants' acts of unfair competition described herein have been, and continue to be, willful and deliberate;

C. Grant preliminary and permanent injunctive relief enjoining Defendants, their agents, servants, and employees, and those people in active concert or participation with them, from:

(1) using, contributing to, or inducing use of, CoronaCide's name, the CoronaCide™ Trademark, or any of Defendants' Deceptive CoronaCide Content;

(2) using any false designation, description or representation regarding the source or sponsorship of its purported goods and/or services, or stating or implying that Defendants or their agents are connected with the goods and/or services of CoronaCide, thereby damaging CoronaCide's goodwill and reputation;

(3) causing a likelihood of confusion or misunderstanding as to the affiliation, source, or sponsorship of Defendants' businesses and/or Defendants'

   purported goods or services, including but not limited to causing a likelihood of confusion or misunderstanding as to Defendants' affiliation, connection, or association with CoronaCide or any of CoronaCide's goods and/or services; and

  (4) otherwise engaging in acts of unfair competition against CoronaCide.

D.   Entry of judgment requiring Defendants to offer up for destruction all articles, displays, advertisements, labels, signs, prints, packages, packaging, wrappers, receptacles, brochures, catalogs, plates, molds, uniforms, and logo items in its possession or control which display a product which is identical to, or confusingly similar with, CoronaCide's test kits, including all such articles containing an image or text used by CoronaCide or the CoronCide™ Trademark, as provided by Section 36 of the Lanham Act, 15 U.S.C. §1118;

E.   Entry of judgment requiring Defendants to file with the Court and to serve upon CoronaCide's counsel within thirty (30) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which it has complied with such injunction or order pursuant to Section 34 of the Lanham Act, 15 U.S.C. §1116(a);

F.   Entry of judgment:

 (1) Requiring Defendants to account to CoronaCide for any and all profits derived by them from purported sales of CoronaCide Test Kits;

 (2) Awarding CoronaCide such actual damages as it has sustained by reason of Defendants' acts of unfair competition in violation of Section 43(a)(1)(A)

of the Lanham Act, 15 U.S.C.§1125(a)(1)(A), including but not limited to, disgorgement of Defendants' profits, CoronaCide's lost profits, and the costs of this action;

(3) Awarding CoronaCide treble its actual damages for Defendants' acts of unfair competition;

(4) Finding that this was an exceptional action and awarding CoronaCide its attorneys' fees incurred in bringing and maintaining this action; and

G. Awarding such other and further relief to CoronaCide as this Court deems just and necessary.

### COUNT II
**Violation of Florida's Deceptive and Unfair Trade Practices Act, F.S. § 501.201 *et seq.***

48. CoronaCide realleges and incorporates by reference the allegations in paragraphs 1 through 41 above.

49. Defendants' use of the CoronaCide™ Trademark and the Defendants' Deceptive CoronaCide Content constitute deceptive and unfair practices under Florida's Deceptive and Unfair Trade Practices Act, Section 501.201 *et seq.*, Florida Statutes.

50. Specifically, Defendants' use of the CoronaCide™ Trademark and the Defendants' Deceptive CoronaCide Content and attempts to profit from the purported sale of CoronaCide Test Kits to third parties, goes against public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

51. As a direct result of Defendants' deceptive and unfair practices, CoronaCide has suffered and continues to suffer damages.

WHEREFORE, CoronaCide respectfully requests that the Court:

(A)   Enter judgment in favor of CoronaCide and finding that Defendants engaged in deceptive and unfair trade practices in violation of Florida's Deceptive and Unfair Trade Practices Act, Section 501.201 *et seq.*, Florida Statutes;

(B)   Grant preliminary and permanent injunctive relief enjoining Defendants, their agents, servants, and employees, and those people in active concert or participation, from engaging in the activities of Defendants described herein that constitute deceptive and unfair trade practices under Section 501.201 *et seq.*, Florida Statutes;

(C)   Enter judgment in favor of CoronaCide awarding it such damages as it has sustained by reason of Defendant's deceptive and unfair trade practices, including but not limited to, compensatory damages, attorney's fees, and costs; and

(D)   Award such other and further relief to CoronaCide that this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

CoronaCide hereby demands a trial by jury on all issues so triable.

## VERIFICATION

I, Edward Joseph Eyring II, state under penalty of perjury that the foregoing is true and correct. Executed on April 8, 2020.

_____
Edward Joseph Eyring II

Dated: April 8, 2020

Respectfully submitted,

/s/ Richard E. Fee
Richard E. Fee
Florida Bar No. 813680
Kathleen M. Wade
Florida Bar No. 127965
FEE & JEFFRIES, P.A.
1227 N. Franklin Street
Tampa, Florida 33602
(813) 229-8008
rfee@feejeffries.com
kwade@feejeffries.com
bmayer@feejeffries.com

and

/s/ Anton Hopen
Anton Hopen
Florida Bar No. 66877
SMITH & HOPEN, P.A.
180 Pine Avenue North
Oldsmar, Florida 34677
(813) 925-8505
ah@smithhopen.com
intake@smithhopen.com

***Counsel for Plaintiff, CoronaCide, LLC***