**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CORONACIDE, LLC,                                             CASE NO.:  8:20-cv-00816-CEH-AAS

        Plaintiff,

    v.

WELLNESS MATRIX GROUP, INC.,
and GEORGE TODT,

        Defendants.

_____/

## MOTION TO DISMISS FOR LACK OF IN PERSONAM JURISDICTION AND FOR FORUM NON CONVENIENS

TO PLAINTIFF, CORONACIDE, LLC, AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant, WELLNESS MATRIX GROUP, INC. ("WMGR"), hereby moves that this Honorable Court dismiss Plaintiff, CORONACIDE, LLC's, Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, or in the alternative, that this Honorable Court dismiss Plaintiff's Complaint based on the common-law doctrine of forum non conveniens.

This Motion will be made on the following grounds:

1) This forum lacks in personam jurisdiction over WMGR, a Nevada corporation headquartered in Huntington Beach, CA. The Complaint contains no factual allegations evidencing the requisite minimum contacts with the State of Florida;

2) That California is the appropriate forum for the litigation of this matter since almost every witness and any relevant documents are all located in California;

3) Plaintiff lacks sufficient contacts with Florida for this matter to proceed in the Middle District. Plaintiff's sole manager, Joe Eyring, registered Plaintiff LLC in Florida on April 7, 2020 for the express purpose of forum shopping and inconveniencing Defendants by filing in an improper jurisdiction;

4) That private and public interests weigh in favor of dismissal for lack of in personam jurisdiction as well as forum non conveniens; and

5) Local counsel, Andrew S. Kanter, conferred with opposing counsel, Richard Fee, prior to the filing of Defendant's Motion to Dismiss and could not reach an agreement on this issue.

This Motion to Dismiss is based upon this Notice, the attached Memorandum of Points and Authorities, the Affidavit of WMGR CEO, Barry G. Migliorini, Plaintiff's Complaint, and all records and pleadings as may be presented at or before the ruling on this Motion.

DATED:  June 9, 2020                    /s/ANDREW S. KANTER, ESQ._____

Andrew S. Kanter, Esq.
Florida Bar No.: 0037584
akanter@akanterlaw.com
LAW OFFICE of ANDREW S. KANTER, PLLC
P.O. BOX 173378
Tampa, FL 33672
(813) 527-0768 TELEPHONE
LOCAL COUNSEL for Defendant, WELLNESS MATRIX GROUP, INC.

**TABLE OF CONTENTS**

I. INTRODUCTION..................................................................................................6

II. STATEMENT OF FACTS...................................................................................7

III. SUMMARY OF RELEVANT FACTS RE: PERSONAL JURISDICTION AND VENUE....................................................................................................................10

    A. Facts Relevant to Personal Jurisdiction......................................................10

    B. Additional Facts Relevant to Forum Non Conveniens..................................11

**MEMORANDUM OF POINTS AND AUTHORITIES**

IV. PLAINTIFF FAILS TO SHOW THAT THIS COURT HAS PERSONAL JURISDICTION OVER MOVING DEFENDANT..................................................................................11

    A. Plaintiff Fails to Show That Moving Defendant Has the Necessary "Continuous and Systematic Contacts" With Florida to Confer General Jurisdiction Over WMGR....................................................................................................................11

    B. Plaintiff Cannot Satisfy the Three-Part Test for Limited Jurisdiction Over Moving Defendant............................................................................................................12

        1) Defendant WMGR Has Not Purposefully Availed Itself of the Privilege to Do Business in Florida or Purposefully Directed Its Activities Toward Florida....................................................................................................................13

        2) Plaintiff's Claims Do Not Arise Out Of, or Result From, Any Forum-Related Activities by Either Defendant..............................................................................15

        3) Exercising Personal Jurisdiction Over Either Defendant Would Be Unreasonable........................................................................................................15

V. PLAINTIFF'S COMPLAINT SHOULD ALSO BE DISMISSED BASED ON FORUM NON

CONVENIENS............................................................................................................15

      A. An Adequate Alternative Forum Exists............................................................16

      B. Private and Public Interest Factors Favor California.......................................16

            1) The Private Interest Factors Favor California......................................16

            2) The Public Interest Factors Favor California.......................................18

C. The Balance of Conveniences Outweigh Plaintiff's Choice of Forum.......................................18

VI. CONCLUSION............................................................................................................19

ATTACHMENT:  Affidavit of Barry G. Migliorini, CEO of Defendant, WMGR

## TABLE OF AUTHORITIES

Asahi Metal Industry Co., Ltd. v. Superior Court, 480 U.S. 102 (1987).........................................15

ASES American Dredging Co. v. Miller, 510 U.S. 443 (1994).........................................................16

Bancroft & Masters, Inc. v. Augusta National, Inc., 223 F.3d 1082 (9th Cir. 2000).......................14

Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985)...................................................................13

Calder v. Jones, 465 U.S. 783(1984)..............................................................................................14

Ceramic Corp. of Amer. v. Inka Maritime Corp., 1 F.3d 947 (9th Cir. 1993).................................16

Contact Lumber Co. v. P.T. Moges Shipping Co., 918 F.2d 1446 (9th Cir. 1990).........................19

Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482 (9th Cir. 1993).........................................11

Creative Technology, Ltd. v. Aztech Syst. PTE Ltd., 61 F.3d 696 (9th Cir. 1995)............16, 17, 18

Dean v. Motel 6 Operating L.P., 134 F.3d 1269 (6th Cir. 1998).....................................................13

Doe v. American Nat'l Red Cross, 112 F.3d 1048 (9th Cir. 1997)..................................................15

Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947)...............................................................................15

Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122 (9th Cir. 2003)……………………………………………………………………………………..11

Holland America Line Inc. v. Wartsila North America, Inc., 485 F.3d 450 (9th Cir. 2007)........................................................................................................................15

International Shoe Co. v. Washington, 326 U.S. 310 (1945)...........................................11

John Doe I v. Unocal Corp., 248 F.3d 915 (9th Cir. 2001).............................................15

Kramer Motors, Inc. v. British Leyland, Ltd., 628 F.2d 1175 (9th Cir. 1980)................11

Lockman Foundation v. Evangelical Alliance Mission, 930 F.2d 764 (9th Cir. 1991)…………………………………………………………………………17, 19

McDonough v. Fallon McElligott, Inc., 1996 U.S. Dist. LEXIS 15139, Civil No. 95-4037 (S.D. Cal. August 5, 1996)........................................................................................14

Pebble Beach Co. v. Caddy, 453 F.3d 1151 (9th Cir. 2006)...........................................14

Piper Aircraft v. Reyno, 454 U.S. 235(1981)...........................................................16, 19

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797 (9th Cir. 2004).........12, 13, 14

Terracom v. Valley Nat'l Bank, 49 F.3d 555 (9th Cir. 1995)..........................................12

Transure, Inc. v. Marsh and McLennan, Inc., 766 F.2d 1297 (9th Cir. 1985)................16

Tuazon v. R. J. Reynolds Tobacco Co., 433 F.3d 1163 (9th Cir. 2006)..........................12

STATUTES Fed. Rule of Civ. Proc. §12(b)(2)..............................................................1

## STATEMENT OF FACTS AND
## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

1.      During the second half of March 2020, Plaintiff's manager, Joe Eyring ("Eyring"), sent marketing and labeling information to Defendant, George Todt ("Todt"), as part of their previous agreement for Todt to market and sell Eyring's product, the CoronaCide CoVid19 antibody test kit. Todt had invited Defendant, WMGR, to participate in this business opportunity.

2.      At some point in February and/or March 2020 Eyring verbally told Todt to sell the test kits for "at home use" even though as of March 16, 2020, Eyring knew that his product was not approved for sale for "at home use." Eyring failed to mention this very important fact to Todt. Eyring also never spoke directly with WMGR or its CEO.

3.      On or about March 25, 2020 Todt discovered that Eyring had misled him. Due to the marketing and labeling of the test kits for "at home use", the otherwise functional and legitimate test kits became "fraudulent" pursuant to FDA regulations and statutes. Todt immediately stopped all sales of test kits for "at home use" so that no "fraudulently" labeled test kits were shipped.

4.      Around approximately the same time, Eyring was interviewed by an NPR reporter. In that interview, Eyring denied that he had any business relationship with Todt and WMGR, and further stated that Todt had no access to his test kits. Eyring's misrepresentations to this reporter resulted in Todt and WMGR having been portrayed by the press as "scammers taking advantage of the immediate crisis to sell fraudulent products to the public" [not quoting Eyring verbatim, but this was the resulting perception]. Eyring's misrepresentations have also led to Federal and local prosecutors launching investigations and commenced litigation against WMGR.

5.      Eyring has significantly damaged both Defendants in a reprehensible and legally compensable manner resulting in the potential and actual loss of several million dollars. Eyring

also picked a jurisdiction as far from Defendants' locations as he could and filed this case to coerce Defendants into a release of all claims or gain a default judgment.

## II. STATEMENT OF FACTS

6.      At all times relevant to this case, approximately February 10, 2020 through April 8, 2020, moving Defendant, Wellness Matrix Group, Inc., a Nevada corporation, (hereinafter "WMGR"), was headquartered and doing business in Orange County, California. WMGR continues to do so under the guidance of its CEO, Barry G. Migliorini ("BGM").

7.      At all times relevant to this case, approximately February 10 through April 8, 2020, Plaintiff's "alter ego", presumed owner, registered manager, and sole known member, Joe Eyring, lived, worked and did business at his headquarters in Sandy, Utah. During this timeframe, Eyring represented to Todt that he was personally located in Utah and working with a Utah corporation called Hempba.

8.      Plaintiff, Coronacide, LLC, did not exist during the two months in question or any other relevant time mentioned in the Complaint. On April 7, 2020, Plaintiff's counsel filed the registration paperwork for Coronacide, LLC in Tampa, Florida, on behalf of Eyring, the registered manager of the new LLC. The Complaint is curiously silent regarding Plaintiff's very recent creation and lack of actual involvement with Defendants.

9.      In the beginning of February 2020, Defendant, Todt, and Plaintiff's "alter ego", Eyring, contacted each other and began discussions regarding the marketing and sale of valid CoVid19 antibody test kits, disinfectants and other such products. Eyring claimed ownership and access to these various products and wanted help with the marketing and sales. Most importantly, he claimed that he was working with FDA toward a temporary approval of his test kit.

10.     Eyring was very interested in Todt and the various sales services he was offering. Among the options offered to Eyring by Todt were the services of Defendant, WMGR. Todt and Eyring made a contractual agreement that Todt and his team would market and sell Eyring's test kit. Eyring further agreed to waive his "10,000 minimum order" requirement so that Todt could order as many, or as few, test kits as he needed.

11.     Todt had proposed that Defendant, WMGR, a company with which he had extensive ties, be the marketing and sales vehicle for Eyring's product. However, Eyring never spoke with any officers or Board members of WMGR and never signed any agreements with WMGR. WMGR never agreed to any business dealings with Eyring, Plaintiff or any of Eyring's other entities. (Declaration of BGM, Paragraph 19).

12.     During the two months that Eyring and Todt were in regular communication Eyring never referenced to any offices or business establishment in Florida. Furthermore, Eyring and Todt made no plans to conduct business specifically in Florida. (Declaration of BGM, Paragraph 4)

13.     The only specific allegation conferring Florida jurisdiction is the fact that Plaintiff is an LLC registered in Florida. Plaintiff LLC was registered the day before the Complaint was filed, which is not mentioned therein.

14.     Along with the misleading nature of its allegations, the verified Complaint omits numerous relevant and independently-verifiable facts. The following statements are offered not for the truth of the facts alleged but simply as a preview of Defendant's case should Plaintiff decide to pursue this litigation in a more appropriate venue.

15.     In its verified Complaint Plaintiff, Coronacide, LLC, fails to mention:

Regarding Florida jurisdiction,

a.      That it didn't exist as an LLC during the two months in question and therefore could not suffer injury or damages;

b.      That during the timeframe alleged in the Complaint, WMGR had no direct contacts with Florida citizens or businesses nor does the Complaint provide any evidence whatsoever showing actual contacts between WMGR and Florida;

c.      That all contacts between Defendant Todt and Joe Eyring involved individuals or locations located in either California or Utah, or both;

d.      That Eyring had hosted Todt at his Utah headquarters and factory on the weekend of March 14-15, 2020;

Regarding the case in general,

e.      That Eyring had authorized Todt to market and sell his test kits;

f.      That Eyring had emailed every piece of allegedly infringing marketing and labeling materials to Todt specifically for his use in marketing Eyring's products, including test kits;

g.      That Eyring orally instructed Todt to sell the test kits for "at home use" when Eyring knew that his test kits were not allowed to be sold for that purpose;

h.      That neither Plaintiff nor Eyring attempted to communicate with Todt or WMGR to stop the alleged misuse of their marketing materials;

i.      That Eyring had previously agreed that he would fulfill smaller orders for Todt and his sales team; and

j.      That on March 19, 2020, with the purpose of commencing marketing and sales of test kits, Eyring forwarded to Todt the FDA notice authorizing the sale of his test kits.

### III. SUMMARY OF RELEVANT FACTS RE: JURISDICTION AND VENUE

**A. Facts Relevant to Personal Jurisdiction**

16.    Todt is an individual living and working in California.

17.    WMGR is a Nevada corporation headquartered and doing business in California.

18.    Neither Defendant is registered or qualified to do business in Florida.

19.    Neither Defendant has offices in Florida.

20.    Neither Defendant has a Florida agent for service of process.

21.    Neither directs any advertising specifically toward Florida residents.

22.    WMGR and Todt both have offices in California, but no offices or facilities in Florida.

23.    Neither Defendant has any telephone or facsimile listings or mailing addresses in Florida.

24.    Neither Defendant maintained any books or records in Florida.

25.    Neither Defendant has a bank account or tangible personal or real property in Florida.

26.    Moving Defendant is not aware of any sales in Florida, has had no Florida income and has not paid, nor does it owe, any Florida income tax.

27.    No meetings of WMGR's management boards or equity holders have been held in Florida.

28.    Coronacide has not made any specific allegations of wrongdoing against WMGR in its Complaint.

29.    Todt is an independent consultant and does not exercise any type of control over the day-to-day activities of WMGR.

30.    WMGR has its own management team, offices and bank accounts separate from Todt.

**B. Additional Facts Relevant to Forum Non Conveniens**

31.    Any individuals employed, hired, contracted or otherwise representing moving Defendant who could have possibly engaged in the alleged wrongful conduct were all located in California at that time.

32.    Coronacide's claims are based almost entirely based on documents located in California.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**IV.    PLAINTIFF FAILS TO SHOW THAT THIS COURT HAS PERSONAL JURISDICTION OVER MOVING DEFENDANT.**

33.    As Plaintiff, Coronacide bears the burden of proving that minimum contacts exist between WMGR, on the one hand, and Florida, on the other hand, to justify an exercise of personal jurisdiction over it. Harris Rutsky &Co. Ins. Servs., Inc. v. Bell &Clements Ltd., 328 F.3d 1122, 112829 (9th Cir. 2003). An inquiry into personal jurisdiction centers on a defendant's contacts with the forum state, and is dictated by due process concerns. Kramer Motors, Inc. v. British Leyland, Ltd., 628 F.2d 1175 (9th Cir. 1980). As the United States Supreme Court has long held, the assertion of personal jurisdiction over a nonresident defendant will comport with constitutional due process only if the defendant has sufficient "minimum contacts" with the state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482 (9th Cir. 1993).

**A. Plaintiff Fails to Show That Moving Defendant Has the Necessary "Continuous and Systematic Contacts" With Florida to Confer General Jurisdiction Over WMGR.**

34.    If a foreign defendant engages in "continuous and systematic general business contacts" that "approximate physical presence" in the forum state, general jurisdiction may be exercised.

11

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004). "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." Id. See also Tuazon v. R. J. Reynolds Tobacco Co., 433 F.3d 1163, 1169 (9th Cir. 2006) (noting that the standard for establishing general jurisdiction is high, and requires that the defendant's contacts with the forum state "approximate physical presence").

35.     As shown in the Summary of Relevant Facts and the accompanying declaration of Barry Migliorini, WMGR is based in California and has virtually no contacts with Florida.

36.     Tellingly, Plaintiff Coronacide only makes general allegations in its Complaint that defendants maintain significant, continuous, and/or systematic contact with Florida. The absence of allegations of specific contacts with Florida is unavoidable because there are none. Terracom v. Valley Nat'l Bank, 49 F.3d 555 (9th Cir. 1995)

37.     Accordingly, Florida may not exercise general personal jurisdiction over WMGR.

**B. Plaintiff Cannot Satisfy the Three-Part Test for Limited Jurisdiction Over Moving Defendant.**

38.     If, as is usually the case, a foreign defendant's activities within the state are not so pervasive as to justify the exercise of general jurisdiction, the Court may exercise "limited" or "specific" personal jurisdiction, but only if each part of the following three prong test is satisfied:

(1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. Schwarzenegger, 374 F.3d at 802.

39.     The plaintiff bears the burden of satisfying the first two prongs of the test. Schwarzenegger, 374 F.3d at 802. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state. If the plaintiff succeeds in satisfying the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. Burger King Corp. v. Rudzewicz, 471U.S. 462, 476-78 (1985); Dean v. Motel 6 Operating L.P., 134 F.3d 1269 (6th Cir. 1998).

40.     Here, none of the three prongs of the limited jurisdiction test is satisfied.

**1) Defendant WMGR Has Not Purposefully Availed Itself of the Privilege to Do Business in Florida or Purposefully Directed Its Activities Toward Florida.**

41.     "Purposeful availment" and "purposeful direction" are two distinct concepts. Purposeful availment is "most often used in suits sounding in contract" and "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there" by which a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Schwarzenegger, 374 F.3d at 802 (citations omitted).

42.     Coronacide cannot satisfy this test. WMGR received no "benefit, privilege, or protection from Florida in connection with [the claims asserted in the lawsuit], and the traditional quid pro quo justification for finding purposeful availment thus does not apply." Id. at 803. Unquestionably, they did not and could not have reasonably expected to be haled into court here. As these entities

could not have reasonably foreseen defending a lawsuit in Florida, they are not subject to personal jurisdiction in Florida.

43.     In contrast to "purposeful availment," the "purposeful direction" standard is most often used in suits sounding in tort. Schwarzenegger, 374 F.3d at 802 (citations omitted). This showing "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." Id. at 803.

44.     The purposeful direction test is evaluated under the three-part "effects" test based on Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482 (1984). The test "requires that the defendant allegedly have:

(1) committed an intentional act,

(2) expressly aimed at the forum state, and

(3) causing harm that the defendant knows is likely to be suffered in the forum state." Schwarzenegger, 374 F.3d at 803 (citations omitted).

45.     The Ninth Circuit has noted that referring to the Calder test as an "effects" test can be misleading. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1156 (9th Cir. 2006). For this reason, it has warned courts not to focus too narrowly on the test's third prong –the effects prong – holding that "something more" is needed in addition to a mere foreseeable effect. In other words, the defendant's conduct must be "expressly aimed" at the forum state. Id.

46.     Coronacide's Complaint fails to allege that either Defendant committed any specific and intentional act that was "expressly aimed" at Florida. Nor does it allege "individualized targeting" of Florida residents by these defendants with respect to the claims at issue. Bancroft &Masters, Inc. v. Augusta National, Inc., 223 F.3d 1082, 1088 (9th Cir. 2000). The Complaint lacks sufficient allegations of Florida contacts to give rise to jurisdiction in the Middle District of Florida.

47.     While the Internet can provide sufficient contacts for jurisdiction, Coronacide's complaint contains no specific allegations regarding that basis for jurisdiction. McDonough v. Fallon McElligott, Inc., 1996 U.S. Dist. LEXIS 15139, Civil No. 95-4037 (S.D. Cal. August 5, 1996). Furthermore, none of the websites owned by either defendant has sufficient Florida contacts to give rise to jurisdiction here. Holland America Line Inc. v. Wartsila North America, Inc., 485 F.3d 450 (9th Cir. 2007).

**2) Plaintiff's Claims Do Not Arise Out Of, or Result From, Any Forum-Related Activities by Either Defendant.**

48.     Coronacide also does not satisfy the second prong of the limited jurisdiction test, which requires it to show that, but for Defendants' Florida contacts, Coronacide's claims would not have arisen. Doe v. American Nat'l Red Cross, 112 F.3d 1048, 1051 (9th Cir. 1997). As discussed above, neither moving defendant is alleged to have engaged in any specific conduct in Florida, so they necessarily did not cause any harm that occurred in Florida.

**3) Exercising Jurisdiction Over Either Defendant Would Be Unreasonable.**

49.     Finally, Plaintiff should not be permitted to hale Defendants into court in Florida because it would be unreasonable for the Court to exercise jurisdiction under the circumstances presented. The unique burdens on foreign defendants, which arise from having to defend themselves within the forum state, are entitled to "significant weight" in assessing reasonableness. Asahi Metal Industry Co., Ltd. v. Superior Court, 480 U.S. 102, 114(1987).; John Doe I v. Unocal Corp., 248 F.3d 915 (9th Cir. 2001). This requirement defeats jurisdiction even if Defendants had participated in activities in Florida that gave rise to Coronacide's claims, which they did not. Id.

**V. PLAINTIFF'S COMPLAINT SHOULD ALSO BE DISMISSED BASED ON FORUM NON CONVENIENS.**

50.     If in the unlikely event this Court finds in personam jurisdiction over WMGR, it should still dismiss this action against WMGR based on the common-law doctrine of forum non conveniens. This doctrine applies when a defendant, like WMGR in this case, is a corporation doing business in one primary location outside of the Plaintiff's chosen jurisdiction. Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947); Transure, Inc. v. Marsh and McLennan, Inc., 766 F.2d 1297 (9th Cir. 1985).

51.     Under this doctrine, courts have broad discretion to decline jurisdiction in favor of a more convenient forum in a more appropriate state. American Dredging Co. v. Miller, 510 U.S. 443, 448 (1994).

52.     A party moving to dismiss on grounds of forum non conveniens must show:

(1) the existence of an adequate alternative forum; and

(2) that the balance of private and public interest factors weigh in favor of dismissal. Piper Aircraft v. Reyno, 454 U.S. 235, 238(1981); Creative Technology, Ltd. v. Aztech Syst. PTE Ltd., 61 F.3d 696, 703(9th Cir. 1995).

53.     Each of these elements is readily established in this case.

**A. An Adequate Alternative Forum Exists.**

54.     The threshold inquiry is whether there is an adequate alternative forum available for adjudication. Ceramic Corp. of Amer. v. Inka Maritime Corp., 1 F.3d 947, 949 (9th Cir. 1993). The answer to that inquiry is affirmative. The same federal intellectual property laws apply in California and this moving Defendant is unquestionably subject to the jurisdiction of the California federal courts.

55.     Assuming arguendo that Coronacide has any viable claims at all against these defendants, it is undisputed that California provides a valid forum for deciding those claims.

**B. Private and Public Interest Factors Favor California.**

**1) The Private Interest Factors Favor California.**

56.     Most important in determining whether to grant a forum non conveniens motion are private interest factors, which fall into three categories:

(1) relative ease of access to sources of proof;

(2) availability of witnesses; and

(3) all other practical factors favoring an expeditious and inexpensive trial. Lockman Foundation v. Evangelical Alliance Mission, 930 F.2d 764 (9th Cir. 1991); Creative Tech., 61 F.3d at 703.

57.     Where, as here, most of, if not all, of the witnesses and documents are in an alternate forum, California, the action should be dismissed. Creative Tech., 61 F.3d. at 703 (dismissal upheld in copyright action where design and manufacture of both parties' computer software took place in Singapore, so that most of the witnesses and documents were located there).

58.     Here, there can be no dispute that California provides better access to sources of proof, the relevant witnesses and is a much more expeditious and inexpensive forum for the resolution of the instant disputes. Coronacide admits as much by failing to plead with specificity in its Complaint the allegedly wrongful conduct engaged in by defendants that took place in Florida. Nor does Plaintiff plead any specifics regarding the harm Coronacide allegedly suffered in Florida.

59.     Coronacide admits and alleges that each of the Defendants is in California. Coronacide also admits in the Complaint that WMGR has its main office in California.

60.     In contrast, Coronacide's Complaint makes only general allegations that it was harmed in Florida without providing any dates, names, specific actions or damages, which means there should be no use of Florida's jurisdiction.

61.     This is true because, as noted above, Todt and WMGR do business almost entirely in and from California. They have no offices or places of business in Florida, and none of their employees, officers, or directors reside in Florida. The allegedly infringing websites are also operated from California and were built in California.

62.     The vast majority of discovery in this action will come from, and take place in, California for the obvious reason that the events at issue in the Complaint took place in California. Currently, the Defendants' documents and all of Defendants' witnesses are in California.

63.     The Complaint does not state any specific conduct engaged in by Coronacide in Florida. This because Coronacide was based out of Eyring's offices in Utah as far as either Defendant was aware prior to the very recent formation of Plaintiff and the ensuing complaint filed in this forum. Any discovery responses by Coronacide will come from witnesses or documents located in Utah. The lawyers for the parties would have to travel to California to take depositions, and will have to incur the expense of flying those same witnesses to Florida for trial.

**2) The Public Interest Factors Favor California.**

64.     Public interest factors include the burden on local courts and juries, the local interest in having the matter decided locally, interest in having a case tried in a forum familiar with the applicable law; avoidance of unnecessary problems in conflicts of law; and pending litigation in an alternate forum. Creative Tech., 61 F.3d at 703-04. These factors also weigh in favor of dismissal on forum non conveniens grounds. The burden on this Court and the jury would be extreme in this case because the witnesses and documents are in California.

65.     Because the events that gave rise to this litigation took place in California and Utah, not Florida, and Coronacide made no specific allegations that took place in Florida, there is likewise no local interest in having this matter resolved in Florida.

66.     Given the absolute lack of nexus between moving defendants and Florida or between Coronacide's claims and Florida; the crowded federal dockets; the complex choice of law issues; and the risk of inconsistent judgments, it would be an inefficient use of judicial resources for this case to proceed in Florida.

**C. The Balance of Conveniences Outweigh Plaintiff's Choice of Forum**

67.     Coronacide may argue that dismissal would deprive a Florida company of access to its home forum. While a plaintiff's choice of forum may often be respected, "[t]he deference due to plaintiff[]…is far from absolute." Lockman, 930 F.2d at 767. As the Supreme Court noted, "[a] citizen's forum choice should not be given dispositive weight . . . [I]f the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." Piper Aircraft, 454 U.S. at 256 n.23.

68.     "[I]n practice, 'the cases demonstrate that defendants frequently rise to the challenge' of showing an alternative forum is the more convenient one." Lockman, 930 F.2d at 767 (quoting Contact Lumber Co. v. P.T. Moges Shipping Co., 918 F.2d 1446, 1449 (9th Cir. 1990)) (emphasis added). As set forth above, the substantial burden on defendants of litigating in Florida far outweighs the relatively minimal inconvenience to Coronacide of litigating in California.

69.     Plaintiff's blatant attempt to forum shop and inconvenience Defendants should not be supported by the Courts.

**VI. CONCLUSION**

70.     Defendant, WMGR, represents that it would be a gross miscarriage of justice for Plaintiff to further leverage its superior resources against this Defendant by filing suit in the Middle District of Florida when virtually any alternative forum mentioned in this Motion to Dismiss (particularly the proper court in the State of California) would be far more appropriate. WMGR

19

has already lost millions of dollars in potential and actual damages and should not be punished by having to continue litigating in the Middle District of Florida when there is little, if any, relevant connection to this matter based even on the Plaintiff's own allegations. The fact that Plaintiff's sole manager, Joe Eyring, created Plaintiff LLC just prior to filing this Complaint should be evidence enough that this is unfortunately a prototypical attempt at "forum shopping" despite all proof to the contrary.

**WHEREFORE**, Defendant, WELLNESS MATRIX GROUP, INC., respectfully requests this Honorable Court grant Defendant's Motion to Dismiss in its entirety and any other relief It deems just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 9, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Richard E. Fee, Esq. and Kathleen M. Wade, Esq., FEE & JEFFRIES, P.A., 1227 N. Franklin Street, Tampa, FL 33602; rfee@feejeffries.com; kwade@feejeffries.com; bmayer@feejeffries.com; Anton Hopen, Esq., SMITH & HOPEN, P.A., 180 Pine Avenue North, Oldsmar, FL 34677; ah@smithhopen.com; intake@smithhopen.com.

**I FURTHER CERTIFY** that I mailed the foregoing document and the notice of electronic filing by U.S. Mail to the following non-CM/ECF participants: None.

Dated:  June 9, 2020          /s/ANDREW S. KANTER, ESQ.

Andrew S. Kanter, Esq.
Florida Bar No.: 0037584
akanter@akanterlaw.com
LAW OFFICE of ANDREW S. KANTER, PLLC
P.O. BOX 173378
Tampa, FL 33672
(813) 527-0768 TELEPHONE
LOCAL COUNSEL for Defendant, WELLNESS MATRIX GROUP, INC.