## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CORONACIDE, LLC,

      Plaintiff,

v.                                                                  Case No: 8:20-cv-00816-CEH-AAS

WELLNESS MATRIX GROUP,
INC. and GEORGE TODT,

      Defendants.

_____/

## O R D E R

This cause comes before the Court upon Wellness Matrix Group, Inc.'s Motion to Dismiss for Lack of In Personam Jurisdiction and for Forum Non Conveniens (the "Motion to Dismiss") (Doc. 13), to which CoronaCide, LLC responds in opposition (Doc. 16), and CoronaCide, LLC's Motion to Deny or Strike Defendant Wellness Matrix Group, Inc.'s Motion to Dismiss for Lack of In Personam Jurisdiction and for Forum Non Conveniens for Failure to Comply with Court Order (the "Motion to Deny or Strike") (Doc. 20). The Court, having considered the parties' submissions and being fully advised in the premises, will deny the Motion to Deny or Strike and deny the Motion to Dismiss.

## I.    BACKGROUND

This action brought under the Lanham Act and the Florida Deceptive and Unfair Trade Practices Act arises from the allegedly false and deceptive advertising of, and sales offers for, COVID-19 test kits to the public during the COVID-19 pandemic.

1

*See* Doc. 1 ¶1. CoronaCide, LLC ("CoronaCide") alleges the following facts in its Verified Complaint and Demand for Jury Trial (the "Complaint"). CoronaCide, a Florida limited liability company with a "primary office" in Tampa, Florida, serves as the exclusive importer and distributor of CoronaCide COVID-19 IgM/IgG rapid tests ("CoronaCide Test Kits") in the United States. *Id.* at ¶6. A blood sample enables the CoronaCide Test Kits to detect the presence of antibodies relating to the COVID-19 virus. *Id.* at ¶14. The United States Food & Drug Administration authorized CoronaCide to distribute the CoronaCide Test Kits to licensed healthcare practitioners in the United States for diagnostic use. *Id.* at ¶15. CoronaCide markets, offers to distribute, and sells the CoronaCide Test Kits to hospitals, medical companies, and state and local governments who represent that the kits will be used at the point of care. *Id.* at ¶18. CoronaCide does not market, sell, or distribute the CoronaCide Test Kits for at-home use. *Id.* at ¶17.

According to CoronaCide, George Todt ("Todt") serves as a representative for Wellness Matrix Group, Inc. ("Wellness Matrix"). *Id.* at ¶20. Plaintiff alleges that Todt contacted CoronaCide in February of 2020, during which time he expressed an interest in Wellness Matrix purchasing CoronaCide Test Kits. *Id.* Todt also sent a purchase order from Wellness Matrix to CoronaCide for CoronaCide Test Kits. *Id.* However, after some investigating, CoronaCide declined to engage in business with Todt or Wellness Matrix, and the company rejected the purchase order. *Id.* at ¶¶21–22.

Nonetheless, even though CoronaCide serves as the sole source for CoronaCide Test Kits in the United States and the company expressly rejected Wellness Matrix's

only purchase order for CoronaCide Test Kits, Wellness Matrix began offering CoronaCide Test Kits to the public through www.cs-28.com and www.stopcorona28.com (the "Websites"). *Id.* at ¶¶8, 23. The Websites prominently have displayed the CoronaCide™ trademark without the authorization or consent of CoronaCide. *Id.* at ¶24. The content of the Websites is composed almost entirely of text and images taken from CoronaCide's materials for the CoronaCide Test Kits, including an altered image of one of the CoronaCide Test Kits, text used by CoronaCide to describe CoronaCide Test Kits, the test accuracy for CoronaCide Test Kits, text from the "procedure" and "advantages" portions of the brochure for the CoronaCide Test Kits, and text from the "materials" section of the product insert for the CoronaCide Test Kits. *Id.* at ¶25. The Websites also contain an altered copy of a CoronaCide brochure with the CoronaCide™ trademark replaced with "CoronaStop 28" and "StopCorona28.com" added and displayed prominently. *Id.* at ¶26. One of the Websites, www.cs-28.com, was active as of at least April 7, 2020. *Id.* at ¶25.

CoronaCide initiated this action against Wellness Matrix and Todt on April 8, 2020. *See id.* at 14. CoronaCide sues Wellness Matrix and Todt for unfair competition under 15 U.S.C. § 1125(a), alleging that their misuse of the CoronaCide™ trademark made or otherwise contributed to the making of false designations of origin, false or misleading factual descriptions, or false or misleading factual representations, which are likely to cause mistake or confusion. *Id.* at ¶43. CoronaCide also sues Wellness Matrix and Todt for violating the Florida Deceptive and Unfair Trade Practices Act,

3

Florida Statutes § 501.201 *et seq.*, alleging that their conduct and use of the CoronaCide™ trademark constitutes deceptive and unfair practices. *Id.* at ¶49.

In the Motion to Dismiss, Wellness Matrix challenges the Court's exercise of personal jurisdiction over it. Doc. 13 at 11–15. Wellness Matrix alternatively moves the Court to dismiss the action based on *forum non conveniens*. *Id.* at 1, 15–19. CoronaCide moves the Court to deny or strike the Motion to Dismiss. Doc 20 at 3.

## II.   MOTION TO DENY OR STRIKE

The Court begins with the Motion to Deny or Strike because it is directed at the Motion to Dismiss. The Motion to Deny or Strike will be denied.

The Court's Interested Persons Order for Civil Cases provides that "no party may seek discovery from any source before filing and serving a Certificate of Interested Persons and Corporate Disclosure Statement." Doc. 4 at 3. Further, "[a] motion, memorandum, response, or other paper—including emergency motion—*may* be denied or stricken unless the filing party has previously filed and served its Certificate of Interested Person and Corporate Disclosure Statement." *Id.* (emphasis added).

CoronaCide moves the Court to deny or strike the Motion to Dismiss because Wellness Matrix never filed a certificate of interested persons and corporate disclosure statement. Doc. 20 at 2. CoronaCide's counsel represents that she communicated with Wellness Matrix's counsel regarding this failure. *Id.* After CoronaCide filed the Motion to Deny or Strike, the Court allowed Wellness Matrix's counsel to withdraw. Doc. 28 at 1. In doing so, the Court instructed Wellness Matrix to retain new counsel and file a certificate of interested persons and corporate disclosures statement. *Id.*

4

Wellness Matrix failed to do so within the allotted time. As such, CoronaCide moved for an entry of default against Wellness Matrix, Doc. 34 at 2, and the Clerk entered default against Wellness Matrix on September 21, 2020, Doc. 35 at 1. Accordingly, Wellness Matrix, which is presently in default, still has not filed a certificate of interested persons and corporate disclosure statement.

But, upon review, the Court declines to deny or strike the Motion to Dismiss. The Motion to Deny or Strike lacks the requisite memorandum of legal authority in support of the request. *See* Local R. M.D. Fla. 3.01(a). Further, the Interested Persons Order for Civil Cases affords the Court discretion in denying or striking motions or other papers. The Court declines to deny or strike the Motion to Dismiss on this basis.

## III.    MOTION TO DISMISS

### A. Personal Jurisdiction

#### i.   *Legal Standard*

Personal jurisdiction "concern[s] the extent of a court's power over the parties and fairness of requiring a party to defend itself in a foreign forum." *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 857 (11th Cir. 1988). Motions to dismiss for lack of personal jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(2). A court must dismiss an action against a defendant over which it lacks personal jurisdiction. *Smith v. Trans-Siberian Orchestra*, 689 F. Supp. 2d 1310, 1312 (M.D. Fla. 2010) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n. 6 (11th Cir. 1999)).

To determine whether personal jurisdiction exists over an out-of-state defendant, courts undertake a two-step analysis. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). First, the court must determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute. *See Future Tech. Today*, *Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). Second, if the court determines that the forum state's long-arm statute has been satisfied, the court must then decide whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* In determining whether jurisdiction comports with the Due Process Clause, the court must ask "(1) whether [the] defendant has established sufficient 'minimum contacts' with the [forum state]; and (2) whether the exercise of this jurisdiction over [the] defendant would offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

To withstand a motion to dismiss, a plaintiff must plead sufficient facts to establish a prima facie case of jurisdiction over the non-resident defendant. *Smith*, 689 F. Supp. 2d at 1313; *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 625 (11th Cir. 2010) ("The plaintiff bears the initial burden of alleging sufficient jurisdictional facts to make a prima facie case; if the defendant rebuts with contrary affidavit evidence, the plaintiff reassumes the burden."). The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits, and construe all reasonable inferences in the plaintiff's favor. *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). "If the

6

defendant can refute personal jurisdiction by sustaining its burden of challenging the plaintiff's allegations through affidavits or other competent evidence, the plaintiff must substantiate its jurisdictional allegations through affidavits, testimony, or other evidence of its own. *Future Tech. Today, Inc.*, 218 F.3d at 1247. For the burden to shift back to the plaintiff, the affidavit "must contain specific factual declarations within the affiant's personal knowledge." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1351 (11th Cir. 2013) (internal quotation marks omitted). The district court must construe all reasonable inferences in the light most favorable to the plaintiff when confronted with conflicting evidence. *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010); *Consol. Dev. Corp.*, 216 F.3d at 1291.

### ii.   Analysis

Plaintiff alleges that Wellness Matrix is a Nevada corporation with its principal place of business in California. Doc. 1 ¶7. The declaration[1] of Wellness Matrix Chief Executive Officer Barry G. Migliorini ("Migliorini"), the only evidence offered in support of the Motion to Dismiss, does not dispute this allegation, as Migliorini states that Wellness Matrix is a "Nevada corporation headquartered in Southern California . . . ." Doc. 13-1 at 1. Thus, Wellness Matrix is an out-of-state defendant.  Wellness Matrix claims that the Court lacks personal jurisdiction over it. Doc. 13 at 11–15. This argument fails.

### 1.   General Jurisdiction

---

[1] Although labeled as a declaration, Migliorini swore to the representations before a notary. Doc. 13-1 at 4.

Florida's long-arm statute authorizes both general jurisdiction and specific jurisdiction. *See* Fla. Stat. § 48.193(1)–(2). Beginning with general jurisdiction, the Florida long-arm statute provides that "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). Florida courts have construed "substantial and not isolated activity" as synonymous with "continuous and systematic business contacts in Florida for pecuniary gain." *See Oldock v. DL&B Enters.*, 100 So. 3d 50, 53 (Fla. 2d DCA 2011). The United States Supreme Court reiterated in *Daimler AG v. Bauman* that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." 571 U.S. 117, 137 (2014). "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Id.* (internal quotation marks and alterations omitted). The proper inquiry is whether a corporation's "affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Id.* at 139 (internal quotation marks and alterations omitted). In an "exceptional case," the operations of a corporation "in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19.

As discussed, CoronaCide alleges that Wellness Matrix is a Nevada corporation with a principal place of business in Huntington Beach, California. Doc. 1 ¶7. CoronaCide further alleges that the Court possesses personal jurisdiction over

Wellness Matrix because Wellness Matrix caused harm to CoronaCide, which is based in Tampa, Florida, by falsely and deceptively offering for sale CoronaCide Test Kits through the Websites, infringing CoronaCide's trademarks, and engaging in unfair competition. *Id.* at ¶11. CoronaCide does not allege that Wellness Matrix is engaged in substantial and not isolated activity within Florida, nor does CoronaCide allege that Wellness Matrix is "at home" in Florida. While CoronaCide generally discusses the Websites in the Complaint, the Complaint "does not explain how the [W]ebsite[s] establish[] *continuous and systematic business* contact with Florida." *Gazelles FL, Inc. v. Cupp*, No. 6:18-cv-544-Orl-22KRS, 2018 WL 7364591, at *6 (M.D. Fla. Sept. 26, 2018) (emphasis added). Although unnecessary, given CoronaCide's allegations, a look to Wellness Matrix's evidence and CoronaCide's response further confirms the lack of general jurisdiction. First, the Court notes that Wellness Matrix relies entirely upon Ninth Circuit law and, consequently, does not even address Florida's long-arm statute. As discussed, Migliorini states in his declaration that Wellness Matrix is a Nevada corporation headquartered in California. (Doc. 13-1 at 1). Migliorini also states that Wellness Matrix is not registered to do business in Florida. *Id.* In its response, CoronaCide does not argue that Wellness Matrix is engaged in substantial and not insolated activity within Florida, or that Wellness Matrix is "at home" in Florida. Instead, CoronaCide focuses on specific jurisdiction under the Florida long-arm statute. Doc. 16 at 6. Accordingly, general jurisdiction is lacking.

### 2. Specific Jurisdiction

"[S]pecific jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action." *Louis Vuitton Malletier*, 736 F.3d at 1352. The long-arm statute provides, in relevant part:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> . . .
>
> 2. Committing a tortious act within this state.

Fla. Stat. § 48.193(1)(a)(2).

Under Florida law, "a nonresident defendant commits 'a tortious act within [Florida]' when he commits an act outside the state that causes injury within Florida." *Louis Vuitton Malletier*, 736 F.3d at 1353 (alterations in original) (original emphasis removed). "This means that where a defendant creates a website and where a defendant posts infringing material does not necessarily control because the most important issue is whether it causes an injury in Florida." *Organic Mattresses, Inc. v. Envtl. Resource Outlet, Inc.*, No. 17-21905-Civ-WILLIAMS/TORRES, 2017 WL 5665354, at *11 (S.D. Fla. Oct. 6, 2017), *report and recommendation adopted sub nom. Organic Mattresses, Inc. v. Envtl. Resource Outlet, Inc.*, No. 17-21905-WILLIAMS/TORRES, 2017 WL 5665356, at *1 (S.D. Fla. Oct. 24, 2017).

10

"Tortious acts committed through website postings . . . present a unique challenge: [u]nlike a phone call, chatroom conversation, or fax, images or words posted to a website are not electronic communications in the traditional sense." *Roca Labs, Inc. v. Boogie Media, LLC*, No. 8:12-cv-2231-T-33EAJ, 2013 WL 2025806, at *3 (M.D. Fla. May 14, 2013). Tortious acts committed through website postings "are not generally directed at any particular person or even a particular state," and "even when directed at a particular person or state, the website is still accessible from virtually any forum." *Id.* As such, "[a] variety of tests have been developed to determine whether website activity may constitute electronic communication into Florida." *Id.* (citing *Smith*, 728 F. Supp. 2d at 1321). In the context of trademark infringement claims and a website, the Eleventh Circuit in *Licciardello v. Lovelady* declined to decide whether trademark injury necessarily occurs where the mark's owner resides because, in that case, "the alleged infringement clearly also occurred in Florida by virtue of the website's accessibility in Florida." 544 F.3d 1280, 1284 (11th Cir. 2008).[2] *See also Louis Vuitton Malletier*, 736 F.3d at 1354 ("For purposes of § 48.193(1)(a)(2), the issue is

---

[2] Following the Eleventh Circuit's decision in *Licciardello*, the Florida Supreme Court, in *Internet Solutions Corporation v. Marshall*, 39 So. 3d 31 (Fla. 2010), analyzed the "tortious act" provision of the long-arm statute and concluded, in the context of defamation, which requires publication, that "although the posting of defamatory material about a Florida resident on a website alone did not constitute the commission of a tortious act . . . the posting of such that was both *accessible* and *accessed* in Florida constituted the commission of a tortious act of defamation . . . ." *Internet Solutions Corp. v. Marshall*, 611 F.3d 1368, 1370 (11th Cir. 2010) (emphasis in original). Given this background, *Internet Solutions* is distinguishable. *See Roca Labs, Inc.*, 2013 WL 2025806, at *5 (noting that, following *Internet Solutions*, "other courts in this district have continued to apply a broader interpretation of [the long-arm statute] determining that a court may exercise personal jurisdiction over a nonresident defendant if a tort committed outside Florida causes injury in Florida")

whether [the defendant's] acts caused injury in Florida. [*Licciardello*] says the tort of trademark infringement caused injury and thus 'occurred in Florida by virtue of the website's accessibility in Florida.'"). "Violations of the Lanham Act and the Florida Deceptive and Unfair Trade Practices Act "constitute 'tortious acts' under the Florida long-arm statute." *Gazelles FL*, 2018 WL 7364591, at *8. An analysis of specific personal jurisdiction requires evaluation of each count within a complaint. *Custom Fab, Inc. v. Kirkland*, No. 6:13-cv-1511-Orl-31DAB, 2014 WL 260090, at *2 n.2 (M.D. Fla. Jan. 23, 2014).

Here, by its allegations, CoronaCide carries its burden. The allegations indicate that CoronaCide, a Florida limited liability company based in Tampa, Florida, suffered injury as a result of Wellness Matrix's violations of the Lanham Act and the Florida Unfair and Deceptive Trade Practices Act. "Allegations that a Florida resident suffered injury from violations of the Lanham Act or [the Florida Unfair and Deceptive Trade Practices Act] are sufficient to state a prima facie case for personal jurisdiction" under section 48.193(1)(a)(2). *Richard Boyd Enters., Inc. v. Aquarium Pharms., Inc.*, No. 09-22301-CIV-UNGARO, 2010 WL 11448226, at *5 (S.D. Fla. Feb. 5, 2010) (collecting cases).

As alleged, despite the rejection by CoronaCide—the sole source for CoronaCide Test Kits in the nation—of Wellness Matrix's only purchase order for CoronaCide Test Kits, Wellness Matrix began offering CoronaCide Test Kits to the public through the Websites. The Websites prominently have displayed, and continue to display, the CoronaCide™ trademark without authorization. CoronaCide details

12

the manner in which the Websites consist of copied text or images taken from CoronaCide's materials for the CoronaCide Test Kits. The Websites also contain an altered copy of the CoronaCide Test Kit brochure, in which the CoronaCide™ trademark is replaced with "CoronaStop 28" and "StopCorona28.com" added and displayed prominently. CoronaCide provides a copy of each of the Websites, the first—www.stopcorona28.com—as it appeared on March 27, 2020, and the second—www.cs-28.com—as it appeared on April 7, 2020. As a result of the specified conduct, CoronaCide "has suffered irreparable injury to its business including harm to its goodwill and reputation, and damages, and is likely to suffer continued irreparable injury and damages . . . ." Doc. 1 ¶36.

CoronaCide alleges that Wellness Matrix, along with Todt, clearly, deliberately, and willfully has violated its rights. CoronaCide also claims that Wellness Matrix and Todt are aware, and have been aware at all time, that they did not purchase, and do not possess, CoronaCide Test Kits available for sale or distribution and that they lack authorization to use, among other things, the CoronaCide™ trademark, any content from the CoronaCide website, or altered content from the CoronaCide website. According to CoronaCide, Wellness Matrix and Todt "have deliberately, intentionally, willfully, and in bad faith used the CoronaCide™ Trademark and the Defendants' Deceptive CoronaCide Content,"[3] to benefit from the

---

[3] CoronaCide defines "Defendants' Deceptive CoronaCide Content" as "all of the elements listed in paragraphs 22 through 24," but these paragraphs do not discuss any "elements." Doc. 1 ¶28. One of the paragraphs alleges that the Websites "have displayed and continue to display

reputation and goodwill that CoronaCide developed in the CoronaCide Test Kits and deceive and mislead the public and potential customers into believing that they sell CoronaCide Test Kits.

And it is on the basis of Wellness Matrix's use of the CoronaCide™ trademark and "Defendants' Deceptive Content" that CoronaCide claims that Wellness Matrix has engaged in unfair competition in violation of the Lanham Act. *Id.* at ¶46. Similarly, Wellness Matrix's use of the CoronaCide™ trademark and "Defendant's Deceptive CoronaCide Content" serves as the basis for CoronaCide's claim under the Florida Deceptive and Unfair Trade Practices Act against Wellness Matrix, as CoronaCide alleges that this conduct "constitute[s] deceptive and unfair practices" under the Act. *Id.* at ¶49. Thus, both claims are predicated upon injury caused by Wellness Matrix to CoronaCide, a Florida limited liability company based in Tampa, Florida. [4] CoronaCide suffered injury in Florida. *See Thursday LLC v. Klhip Inc.*, No. 8:17-cv-1587-T-36AEP, 2018 WL 4216389, at *5 (M.D. Fla. Sept. 5, 2018) (finding that the allegations established a *prima facie* showing that the defendant committed acts that caused injury within Florida where the amended complaint alleged that the defendants deliberately acted to cause improper interruption to the plaintiff-limited liability

---

the CoronaCide™ Trademark." *Id.* at ¶24. Regardless, this recognition does not affect the Court's analysis.

[4] CoronaCide attaches a copy of its website to the Complaint, which provides a Tampa, Florida address for "CoronaCide Corporate Offices" and a Sandy, Utah address for "CoronaCide." Doc. 1-1 at 15. This reference to "CoronaCide Corporate Offices" is consistent with CoronaCide's allegations that the company is based in Tampa. The Court does not construe this portion of the website as contrary to CoronaCide's allegations.

company's business, that the interruption caused harm, and that plaintiff-limited liability company's principal place of business was located in Florida). Further, CoronaCide provides copies of the Websites, one of which was accessed on March 27, 2020, and the other of which was accessed on April 7, 2020. Because CoronaCide, a Tampa-based Florida limited liability company provides copies of the Websites, the Court reasonably infers that these websites were accessible in Florida. CoronaCide has carried its burden.

Because CoronaCide has carried its initial burden, the Court turns to the Migliorini's declaration to determine whether Wellness Matrix refutes personal jurisdiction by sufficiently challenging CoronaCide's allegations. However, a review of the declaration reveals that Wellness Matrix fails to carry its burden. Preliminarily, the Court notes that Migliorini advises that the statements in his declaration are based upon his personal knowledge, "unless stated as based upon information and belief." Doc. 13-1 at 1. Several claims within the declaration are premised upon "information and belief." As such, the basis for Migliorini's knowledge for these assertions is unclear, and the Court declines to rely upon assertions styled in this manner. In any event, Migliorini does not dispute that CoronaCide suffered injury in Florida. Instead, Migliorini seeks to establish that Wellness Matrix does not have a business connection to Florida. However, Wellness Matrix cannot defeat personal jurisdiction based on tortious conduct by attesting that it has not conducted business in Florida and does not have business contacts within the state. *Gazelles FL*, 2018 WL 7364591, at *7. Thus, Wellness Matrix fails to carry its burden.

Therefore, specific jurisdiction under Florida's long-arm statute is satisfied.

### 3. Due Process

Having determined that specific jurisdiction under Florida's long-arm statute is satisfied, the Court now turns to the Due Process portion of the analysis. "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). "The Due Process Clause of the Fourteenth Amendment to the United States Constitution permits personal jurisdiction over a defendant in any State with which the defendant has 'certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Calder v. Jones*, 465 U.S. 783, 788 (1984) (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Thus, determining whether jurisdiction comports with the Due Process Clause may be treated as a two-part test: the court must ask "(1) whether [the] defendant has established sufficient 'minimum contacts' with the [forum state]; and (2) whether the exercise of this jurisdiction over [the] defendant would offend 'traditional notions of fair play and substantial justice.'" *Future Tech. Today*, 218 F.3d at 1249 (quoting *Int'l Shoe*, 326 U.S. at 316).

"In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder*, 465 U.S. at 788 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In specific personal jurisdiction cases, courts apply a three-part due process test, which examines:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton Malletier,* 736 F.3d at 1355.

"The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (internal quotation marks omitted).

"[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 571 U.S. at 284 (emphasis in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "Due process limits on the State's adjudicative authority principally protect the liberty of the non-resident defendant— not the convenience of plaintiffs or third parties." *Id.* The United States Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* "Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated." *Id.* (internal quotation marks omitted). This "minimum contacts" analysis must examine "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* "The plaintiff cannot be the only link between the defendant and the forum. Rather, it

is the defendant's conduct that must form the necessary connection for the forum State that is the basis for jurisdiction over him." *Id.*

Finally, factors that a court must consider in determining whether exercising personal jurisdiction over the defendant would offend traditional notions of fair play and substantial justice include: the burden on the defendant of defending the suit in the forum; the forum's interest in adjudicating the dispute; the plaintiff's interest in obtaining effective relief; the interests of the interstate judicial system in using resources efficiently; and the interests of the state in further shared substantive policies. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1221 (11th Cir. 1999).

Here, although a close call, CoronaCide has carried its burden for the due process portion of the personal jurisdiction analysis. Taking CoronaCide's allegations as true and drawing all reasonable inferences therefrom, except where controverted by Migliorini's declaration, CoronaCide's allegations indicate that Wellness Matrix's contacts with Florida are related to CoronaCide's claims or have otherwise given rise to them. CoronaCide brings its claims because Wellness Matrix, along with Todt, has falsely and deceptively advertised and offered for sale the CoronaCide Test Kits to the general public during the COVID-19 pandemic. As discussed, CoronaCide, a Florida limited liability company based in Tampa, through its Florida-based counsel, provides with the Complaint copies of the Websites as they appeared on March 27, 2020, and April 7, 2020. Thus, the Court reasonably infers that the Websites were accessible in Florida prior to the filing of the Complaint on April 8, 2020. Wellness Matrix has contacts with Florida by virtue of the Websites, which purport to offer for sale

18

CoronaCide Test Kits to the general public, and the Websites were accessible in Florida.

Further, Wellness Matrix's contacts with Florida involve a purposeful availment of the privilege of conducting activities within the forum. The willful, deliberate conduct targeted Tampa-based CoronaCide, the exclusive distributor of the CoronaCide Test Kits. CoronaCide provides copies of the Websites from before the Complaint's filing, both of which include offers of sale to the general public, or point-of-care providers, for COVID-19 test kits to address the pandemic, which, as alleged, constitutes a national emergency. Doc. 1-4 at 1; Doc. 1-5 at 1–3. As such, a reasonable inference flowing from CoronaCide's allegations is that these acts reached Florida. This purposeful availment was not the result of "random, fortuitous, or attenuated contacts." *Id.* (internal quotation marks omitted).

Further, courts may also apply the "effects test" from *Calder* where a plaintiff alleges an intentional tort to establish purposeful availment. *Louis Vutton Malletier*, 736 at 1356. Under this test, "a non-resident's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state . . . when the tort: (1) was intentional; (2) was aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Id.* This test is not the exclusive test for those cases in which intentional torts are alleged and "does not supplant the traditional minimum contacts test" for analyzing purposeful availment. *Id.* at 1357, 1357 n.11. In applying the "effects" test, courts have previously found Lanham Act unfair competition claims

and Florida Deceptive and Unfair Trade Practices Act claims to constitute intentional torts based on the allegations of the operative complaints. *See*, *e.g.*, *Gazelles FL*, 2018 WL 7364591, at *11; *Promex, LLC v. Perez Distribg. Fresno, Inc.*, No. 09-22285-CIV, 2010 WL 3452341, at *8 (S.D. Fla. Sept. 1, 2010).

Here, CoronaCide claims that Wellness Matrix and Todt have clearly, deliberately, and willfully violated its rights. In *Licciardello v. Lovelady*, the defendant posted a website, which had been created in Tennessee, which used the trademark and picture of the plaintiff, who was a nationally-known musician and entertainer, implying that the plaintiff had endorsed the defendant's skill as a personal manager. 544 F.3d at 1282–83. The plaintiff sued the defendant for trademark infringement and related claims in the Middle District of Florida. *Id.* at 1282. On appeal, the Eleventh Circuit recognized that the plaintiff alleged that the defendant committed an intentional tort against him—using his trademarked named and picture on a website accessible in Florida to imply the plaintiff's endorsement. *Id.* at 1287. The court further recognized that "[t]he use was not negligent, but intentional," as "[t]he purpose was to make money from [the plaintiff's] implied endorsement." *Id.* at 1287–88. Therefore, the court held, the unauthorized use of the plaintiff's mark "individually targeted [the plaintiff] in order to misappropriate his name and reputation for commercial gain," which "satisf[ied] the *Calder* effects test for personal jurisdiction—the commission of an intentional tort, expressly aimed at a specific individual in the forum whose effects were suffered in the forum." *Id.* The court advised that its holding was limited to a situation in which "the internet is used as a vehicle for the deliberate, intentional

misappropriation of a specific individual's trademarked name or likeliness and that use is aimed at the victim's state of residence." *Id.* at 1288 n.8.

Some years after *Licciardello*, the Supreme Court issued its opinion in *Walden v. Fiore*. There, a Georgia police officer seized money belonging to two professional gamblers who were traveling through Atlanta on a flight layover on their way to Las Vegas. 571 U.S. at 280–81. The officer transferred the money to a secure location and drafted an affidavit purporting to establish probable cause for the seizure, which the gamblers alleged was false and misleading. *Id.* No forfeiture complaint was filed, and the money was later returned to the gamblers. *Id.* at 281. The gamblers, citizens of California and Nevada, sued the police officer in the United States District Court for the District of Nevada. *Id.* at 280–81. In relevant part, the Supreme Court rejected the gamblers' assertion that the Nevada court had personal jurisdiction over the officer because they had suffered the injury by the officer's tortious conduct—the delayed return of the money—while residing in Nevada. *Id.* at 289–90. The Court explained that "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 286. Indeed, "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in any meaningful way." *Id.* at 289.

Here, CoronaCide alleges that Wellness Matrix, along with Todt, have deliberately, willfully, intentionally, and in bad faith used the CoronaCide™ trademark and the "Defendants' Deceptive Content." Doc. 1 ¶34. This conduct serves

as the basis for both of CoronaCide's claims. Thus, the nature of CoronaCide's claims are intentional torts. Additionally, based on CoronaCide's allegations, these intentional torts were aimed at CoronaCide in Florida, like *Licciardello*. The Websites targeted Tampa-based CoronaCide as the exclusive distributor for CoronaCide Test Kits. And as alleged, it caused injury in Florida that Wellness Matrix should have anticipated, as CoronaCide is based in Florida.

Although "mere injury to a forum resident is not a sufficient connection to the forum," *Walden*, 571 U.S. at 289, CoronaCide also provides copies of the Websites, thereby indicating that the Websites were accessible in Florida. Wellness Matrix's contacts to Florida therefore extend beyond any mere reliance upon CoronaCide's location in Florida. Thus, Wellness Matrix "cannot now claim surprise at being haled into court here." *Licciardello*, 544 F.3d at 1288. *See also Thursday LLC*, 2018 WL 4216389, at *7 (finding the effects test met where the plaintiff alleged that the defendants, who acted on behalf of, or in concert with, the plaintiff's competitor, deliberately and purposefully caused interruption to the plaintiff's business, the plaintiff's product listing was removed and the plaintiff suffered sales losses, including in the Middle District, each time the defendants made an infringement complaint against the plaintiff, and the plaintiff felt the effects of this harm in Florida, where it was principally located). Thus, by its allegations, CoronaCide has carried its burden regarding the "minimum contacts" portion of the due process analysis.

Before turning to the fair play and substantial justice portion of the due process analysis, the Court looks to Migliorini's declaration to determine whether Wellness

Matrix refutes personal jurisdiction by challenging CoronaCide's allegations. This review proves unavailing. Although Migliorini addresses the lack of business connections between Wellness Matrix and Florida, such as Wellness Matrix not maintaining any records or offices in Florida, these assertions do not disturb the minimum contacts analysis. Additionally, Migliorini vaguely represents that Wellness Matrix "has no sales in Florida, has had no Florida income, and ha[s] not paid any Florida income tax," but this does not mean that Wellness Matrix has not received purchase orders from Florida for the products offered on the Websites. Further, although Migliorini broadly claims that "Plaintiff Coronacide, the Florida LLC registered on April 7, 2020," this assertion is undeveloped and unclear. Therefore, CoronaCide has carried its burden.

Turning to the final portion of the due process analysis, Wellness Matrix must make a "compelling case" that the Court's exercise of jurisdiction violates traditional notions of fair play and substantial justice. Wellness Matrix's argument is not compelling. In a three-sentence paragraph, when excluding citations, Wellness Matrix claims that exercising such jurisdiction would be unreasonable and that "unique burdens on foreign defendants" are entitled to "significant weight in assessing reasonableness." Doc. 13 at 15 (internal quotation marks omitted). But this terse analysis ignores the factors that the Court must consider. A review of Migliorini's declaration, in the absence of any supporting argument, does not alter this conclusion. On the other hand, "[w]here a tort injury is felt in Florida, Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct

of nonresidents causing injury in Florida." *Thursday LLC*, 2018 WL 4216389, at *7 (quoting *Licciardello*, 544 F.3d at 1288). Further, any burden of having to defend a lawsuit in a foreign state is mitigated by modern transportation. *Id.* Conversely, a "Florida plaintiff, injured by the intentional misconduct of a nonresident expressly aimed at the Florida plaintiff, is not required to travel to the nonresident's state of residence to obtain a remedy." *Licciardello*, 544 F.3d at 1288.

As such, Wellness Matrix fails to make a "compelling case," and the Court finds the exercise of personal jurisdiction over Wellness Matrix does not violate traditional notions of fair play and substantial justice.

Therefore, based on all the foregoing reasons, the Court will exercise personal jurisdiction over Wellness Matrix.

### B. Forum Non Conveniens

Mainly relying upon caselaw from the Ninth Circuit, Wellness Matrix, "in the alternative," argues that the Court should dismiss the action on *forum non conveniens* grounds. Doc. 13 at 1, 15–19. This argument is unavailing.

Wellness Matrix broadly claims that "California provides a valid forum for deciding" the claims in this action. Citing law from the Ninth Circuit again, Wellness Matrix generally claims that the Court should dismiss the action because "private interest factors favor California," given that, among other reasons, "most" or "all" of "the witnesses and documents" are in California, Wellness Matrix and Todt are located in California, and California "provides better access to" proof and witnesses. *Id.* at 17–18. Relatedly, Wellness Matrix contends that "public interest factors favor

California" based on where events giving rise to this litigation purportedly occurred. *Id.* at 18. Finally, relying upon Ninth Circuit law once more, Wellness Matrix argues generally that a balance of conveniences outweighs CoronaCide's choice of forum. *Id.* at 19. For these reasons, Wellness Matrix contends that the Court must dismiss the action.

*Forum non conveniens* serves as "a common law doctrine that provides district courts with 'inherent power to decline to exercise jurisdiction' with the 'central purpose' being 'to ensure that the trial is convenient.'" *Kolawole v. Sellers*, 863 F.3d 1361, 1369 (11th Cir. 2017) (quoting *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983)). "To successfully move for dismissal based upon *forum non conveniens*, a defendant must demonstrate both that (1) an adequate, alternative forum is available and (2) the public and private factors weigh in favor of dismissal." *Id.*

Critically, however, the United States Supreme Court has explained:

> The common-law doctrine of *forum non conveniens* "has continuing application [in federal courts] only in cases where the alternative forum is abroad," *American Dredging,* 510 U.S., at 449, n. 2, 114 S.Ct. 981, and perhaps in rare instances where a state or territorial court serves litigational convenience best. See 14D C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3828, pp. 620–623, and nn. 9–10 (3d ed.2007). For the federal court system, Congress has codified the doctrine and has provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action. See 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."); cf. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466, 82 S.Ct.

913, 8 L.Ed.2d 39 (1962) (Section 1406(a) "authorize[s] the
transfer of [a] cas[e] ... whether the court in which it was filed
had personal jurisdiction over the defendants or not."). A
defendant invoking *forum non conveniens* ordinarily bears a heavy
burden in opposing the plaintiff's chosen forum.

*Sinochem Int'l Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430 (2007)

(alteration in original). The Eleventh Circuit has set forth nine factors that a court

should consider under 28 U.S.C. § 1404.[5] *Manuel v. Convergys Corp.*, 430 F.3d 1132,

1135 n.1 (11th Cir. 2005).

Here, the proposed alternate forum is not abroad, and Wellness Matrix does not

demonstrate that this case constitutes one of the "rare instances where a state or

territorial court serves litigational convenience best." *Sinochem Int'l Co. Ltd.*, 549 U.S.

at 430. Wellness Matrix broadly claims that California serves as an adequate alternate

forum, but does not identify which court in California. Further, Wellness Matrix relies

almost entirely on Ninth Circuit law. Wellness Matrix does not provide an analysis

under section 1404(a), section 1406(a), or Eleventh Circuit caselaw regarding those

statutes. Therefore, this argument is unavailing, and this request will be denied.

## IV.  CONCLUSION

Accordingly, it is hereby **ORDERED**:

---

[5] These factors are: "(1) the convenience of the witnesses; (2) the location of relevant
documents and the relative ease of access to sources of proof; (3) the convenience of the
parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance
of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the
governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency
and the interests of justice, based on the totality of the circumstances." *Manuel v. Convergys
Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

1. CoronaCide, LLC's Motion to Deny or Strike Defendant Wellness Matrix Group, Inc.'s Motion to Dismiss for Lack of In Personam Jurisdiction and for Forum Non Conveniens for Failure to Comply with Court Order (Doc. 20) is **DENIED**.

2. Wellness Matrix Group, Inc.'s Motion to Dismiss for Lack of In Personam Jurisdiction and for Forum Non Conveniens (Doc. 13) is **DENIED**.

   **DONE AND ORDERED** in Tampa, Florida on March 19, 2021.

   Charlene Edwards Honeywell
   United States District Judge

Copies to:
Counsel and Unrepresented Parties, if any