## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CORONACIDE, LLC,

      Plaintiff,

v.                                                                  Case No: 8:20-cv-816-CEH-AAS

WELLNESS MATRIX GROUP, INC.
and GEORGE TODT,

      Defendants.

_____/

## O R D E R

This cause comes before the Court on Plaintiff's Motion for Default Judgment Against Defendants Wellness Matrix Group, Inc. and George Todt (Doc. 38). The Court, having considered the Motion for Default Judgment and being fully advised in the premises, will deny the motion and dismiss the complaint without prejudice.

## I.    BACKGROUND AND FACTS

This action arises from the allegedly false and deceptive advertising of, and sales offers for, COVID-19 test kits to the public during the COVID-19 pandemic. *See* Doc. 1 ¶1. CoronaCide, LLC alleges the following facts in its Verified Complaint and Demand for Jury Trial. CoronaCide serves as the exclusive importer and distributor of CoronaCide COVID-19 IgM/IgG rapid tests, referred to as "CoronaCide Test Kits," in the United States. *Id.* at ¶6. The United States Food & Drug Administration authorized CoronaCide to distribute the CoronaCide Test Kits to licensed healthcare

1

practitioners for diagnostic use. *Id.* at ¶15. CoronaCide markets, offers to distribute, and sells the CoronaCide Test Kits to hospitals, medical companies, and state and local governments. *Id.* at ¶18. CoronaCide advertises the CoronaCide Test Kits on its website. *Id.* at ¶19.

According to CoronaCide, George Todt serves as a representative for Wellness Matrix Group, Inc. *Id.* at ¶20. Todt allegedly contacted CoronaCide in February of 2020, during which time he expressed an interest in Wellness Matrix purchasing CoronaCide Test Kits. *Id.* He also sent a purchase order from Wellness Matrix to CoronaCide for CoronaCide Test Kits. *Id.* However, after some investigating, CoronaCide declined to engage in business with Todt or Wellness Matrix, and the company rejected the purchase order. *Id.* at ¶¶21–22.

Despite CoronaCide's express rejection, Wellness Matrix began offering CoronaCide Test Kits to the public through www.cs-28.com and www.stopcorona28.com (collectively, the "Websites"). *Id.* at ¶¶8, 23. The Websites prominently have displayed the CoronaCide™ trademark without CoronaCide's authorization or consent. *Id.* at ¶24. The content of the Websites is composed almost entirely of text and images taken from CoronaCide's materials for the CoronaCide Test Kits, including, without limitation, an altered image of one of the CoronaCide Test Kits, text used by CoronaCide to describe CoronaCide Test Kits, the test accuracy for CoronaCide Test Kits, a copy of the "procedure" section of the product insert for the CoronaCide Test Kits, and text from the "materials" section of the product insert for the CoronaCide Test Kits. *Id.* at ¶25. Upon CoronaCide's information and belief,

Todt (1) registered the Websites and "controlled and directed the posting of content" on the Websites and (2) has "controlled and directed the actions" of Wellness Matrix, as described in the complaint. *Id.* at ¶¶8, 12.

Upon CoronaCide's information and belief, Wellness Matrix and Todt have "deliberately, intentionally, willfully, and in bad faith used the CoronaCide™ Trademark" and "elements" described as "Defendants' Deceptive CoronaCide Content" to (1) benefit from the goodwill and reputation that CoronaCide developed from the CoronaCide Test Kits; (2) cause confusion in the COVID-19 test kit marketplace; (3) deceive and mislead potential customers and the public into believing that Wellness Matrix and Todt sell CoronaCide Test Kits; and (4) deceive and mislead potential customers and the public into believing that CoronaCide sponsors, or is affiliated with, Wellness Matrix and Todt. *Id.* at ¶34. CoronaCide has allegedly suffered "irreparable injury to its business" as a direct and proximate result of the conduct of Wellness Matrix and Todt, including harm to goodwill and reputation. *Id.* at ¶36.

CoronaCide sues Wellness Matrix and Todt for unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), alleging that their misuse of the CoronaCide™ trademark made or otherwise contributed to the making of false designations of origin, false or misleading factual descriptions, or false or misleading factual representations, which are likely to cause mistake or confusion. *Id.* at ¶43. CoronaCide also sues Wellness Matrix and Todt for violating the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Statutes § 501.201 *et seq.*, alleging that their

conduct and use of the CoronaCide™ trademark constitutes deceptive and unfair practices. *Id.* at ¶49.

Wellness Matrix initially appeared in this action, Doc. 12 at 1, and challenged the Court's exercise of personal jurisdiction over it and, in the alternative, moved the Court to dismiss based on *forum non conveniens* grounds, Doc. 13 at 1, 15–19. The Court denied the motion. Doc. 40 at 27. Before addressing that motion, however, the Court allowed Wellness Matrix's counsel to withdraw. Doc. 28 at 1. In doing so, the Court instructed Wellness Matrix to retain new counsel and file a certificate of interested persons and corporate disclosures statement. *Id.* Wellness Matrix failed to do so within the allotted time. As such, CoronaCide moved for the Clerk's entry of default against Wellness Matrix, Doc. 34 at 2, and the Clerk entered default against Wellness Matrix on September 21, 2020, Doc. 35 at 1. Also, CoronaCide moved for the Clerk's entry of default against Todt, who has not appeared in this action, for his failure to plead or otherwise defend. Doc. 33 at 2. The Clerk thereafter entered default against Todt. Doc. 35 at 1.

CoronaCide now moves the Court to enter default judgment in favor of CoronaCide and against Wellness Matrix and George Todt. Doc. 38 at 2.

## II.    LEGAL STANDARD

Under Rule 55(b)(1), Federal Rules of Civil Procedure, "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for

not appearing and who is neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

A defendant who defaults is deemed to have "admit[ted] the plaintiff's well-pleaded allegations of fact," *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987), but "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law," *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)[1]; *see also GMAC Commercial Mortg. Corp. v. Maitland Hotel Assocs.*, 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002) (explaining that allegations in a well-pleaded complaint are established as fact on entry of a default judgment, as long as there is a stated claim that allows for relief and jurisdiction is established). "Entry of default judgment is only warranted when there is 'a sufficient basis in the pleadings for the judgment entered.'" *Surtain v. Hamlin Terrance Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (quoting *Nishimatsu Constr. Co.*, 515 F.2d at 1206)).

## III.   ANALYSIS

The Court will examine service of process before examining the well-pleaded allegations of the complaint to determine liability. As explained below, although service of process is proper, CoronaCide fails to state claims for unfair competition under the Lanham Act and for violation of FDUTPA.

---

[1] In *Bonner v. City of Prichard,* the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

A.     **Service of Process**

    *i.*     *Service of Process as to Wellness Matrix*

CoronaCide filed a return of service for Wellness Matrix, which indicated that Wellness Matrix was substitute-served on May 1, 2020. Doc. 11 at 1. Thereafter, Wellness Matrix appeared, Doc. 12 at 1, and filed a Rule 12(b)(2) motion, Doc. 13 at 1. Wellness Matrix did not challenge service of process in that motion and, as a result, waived an insufficient service of process defense. *See* Fed. R. Civ. P. 12(h)(1)(A). As such, service of process upon Wellness Matrix is sufficient.

    *ii.*     *Service of Process as to Todt*

Service of process on Todt, who has neither appeared nor defended in this action, is a closer call. The Federal Rules of Civil Procedure provide, in relevant part, that an individual may be served in accordance with "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where services is made." Fed. R. Civ. P. 4(e)(1). Here, the return of service for Todt indicates that he was served by substituted service in California. Doc. 31 at 1. As such, the Court may analyze serve in accordance with California law.

The California Code of Civil Procedure states:

> If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served, as specified in Section 416.60 [Minors], 416.70 [Wards and conservatees], 416.80 [Political candidates], or 416.90 [Persons not otherwise specified], a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the

6

> household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. Service of a summons in this manner is deemed complete on the 10th day after the mailing.

Cal. Code Civ. P. § 415.20(b).

Further, proof of service requires an "affidavit of the person making the service showing the time, place, and manner of service and facts showing that the service was made in accordance with this chapter." *Id.* § 417.10(a). "The affidavit shall recite or in other manner show the name of the person to whom a copy of the summons and of the complaint were delivered, and, if appropriate, his or her title or the capacity in which he or she is served." *Id.* The "reasonable diligence" requirement of § 415.20(b) is satisfied when "two or three attempts at personal service at a proper place" have been made. *Trackman v. Kenney*, 114 Cal. Rptr. 3d 619, 626 (Cal. Ct. App. 2010).

Here, the return of service for Todt indicates the manner of service as "substituted service" and states that the process server left copies of the summons and complaint at an address in Canoga Park, California with or in the presence of "John Doe, Owner (White, male, 60 years old, grey hair, brown eyes, 5'9", 230 pounds)." Doc. 31 at 1. The process server also attached a declaration of diligence, which indicates that he unsuccessfully attempted service on this address on three prior

occasions.[2] *Id.* at 2. The return of service also indicates that the process server thereafter mailed the documents by first-class mail, postage prepaid, to the address. *Id.* at 1.

The California Supreme Court has admonished California lower courts to construe the state's service statutes liberally, including those for substituted service. *Bein v. Bretchel-Jochim Grp, Inc.*, 8 Cal. Rptr. 2d 351, 353 (Cal. Ct. App. 1992). "To be constitutionally sound the form of substituted service must be reasonably calculated to give an interested party actual notice of the proceedings and an opportunity to be heard . . . [in order that] the traditional notions of fair play and substantial justice implicit in due process are satisfied." *Id.* at 354. (alterations in original) (internal quotation marks omitted). In *Bein*, the appellate court noted that the California Legislature's choice of the term "household" over "family" in § 415.20, Cal. Code Civ. P., indicates that "household" must be liberally construed. *Id.* at 354 n.4. As such, the court held that a gate guard must be considered a competent member of the household where the appellants had authorized the guard to control access to them and their residence. *Id.* The court reasoned that the relationship between the appellants and the guard ensured delivery of process. *Id.*

Also, a California appellate court addressed the validity of substituted service upon a "John Doe" in *Trackman.* 114 Cal. Rptr. 3d at 621. There, the appellee did not

---

[2] Months before filing the return of service, CoronaCide sought an extension of time to serve Todt, Doc. 17 at 1, and filed a "Return of Due Diligence," which indicated over twenty attempts to serve Todt at a different location. Doc. 17-1 at 2–4.

defend the trial court's reasoning in granting a motion to vacate a default judgment in favor of Trackman on appeal, but argued instead that the proof of service was void because the name of the person to whom the summons was given was stated as "John Doe, co-resident." 187 Cal. Rptr. 3d at 621. The appellee argued that "John Doe, co-resident" did not specify the name of the individual to whom copies of the summons and complaint were delivered in accordance with § 417.10(a), Cal. Code Civ. P. *Id.* at 624. The appellate court disagreed, explaining that "[p]ersons in apparent charge of businesses and residence often refuse to give their true legal names." *Id.* As such, the court reasoned, naming such a person a "John Doe" or similar fictious name, or description, is an accepted practice. *Id.* The court recognized several California cases in which courts upheld comparable "John Doe" names or descriptions without disapproval. *Id.*

The court also explained that purpose of the requirement under § 417.10(a), Cal. Code Civ. P., for a proof of service to "recite or in other manner show the name" of the recipient is to enable the recipient to be located in the future if service is challenged. *Id.* The statement that "John Doe, co-resident" received service at a specific address accomplished this purpose. *Id.* In concluding, the court declined to require the use of an individual's "true legal name," given the "widespread practice" of using a description or fictitious name and the California Supreme Court's holding that the service statutes should be liberally construed. *Id.* at 625. Thus, the court in *Trackman* focused on the name or description of the individual who received service in the context of § 417.10(a), Cal. Code Civ. P., which requires the proof of service to recite

9

or otherwise show the name of the person to whom the copies of the summons and the complaint were delivered and, if appropriate, that person's title of capacity.

Here, given the requisite liberal construction of the service statutes, the court finds that service upon Todt was proper. As highlighted above, the term "household" is broadly construed and is not defined as "family." As "Owner" of the house in which Todt purportedly resides, "John Doe," as "Owner" likely would have authorization to control access to Todt or the residence. Service upon the "Owner" of Todt's household is "reasonably calculated" to give Todt "actual notice of the proceedings and an opportunity to be heard." *Bein*, 8 Cal. Rptr. 2d at 353. The fictitious description of the individual who received the process does not render the service invalid, either. Thus, service of process upon Todt is valid under California law.

**B. Liability[3]**

"A default judgment has the effect of establishing as fact the plaintiff's well-pleaded allegations of fact and bars the defendant from contesting those facts on appeal." *De Lotta v. Dezenzo's Italian Rest.*, No. 6:08-cv-2033-ACC-KRS, 2009 WL 4349806, at *1 (M.D. Fla. Nov. 24, 2009). Thus, in determining liability here, the Court must determine whether the complaint contains sufficient well-pleaded factual allegations. In this regard, the Motion for Default Judgment is comparable to a reverse motion to dismiss for failure to state a claim. *Surtain*, 789 F.3d at 1245; *see also*

---

[3] In the Motion for Default Judgment, CoronaCide argues that the Court has personal jurisdiction over Wellness Matrix and Todt. Doc. 38 at 20. The Court previously denied Wellness Matrix's motion to dismiss for lack of personal jurisdiction. Doc. 40 at 27. In light of the analysis below, the Court need not address this argument.

*Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim."). The complaint, therefore, must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "'[N]aked assertions' devoid of 'further factual enhancement'" will not suffice, nor will a complaint that "offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Here, CoronaCide fails to allege sufficient well-pleaded facts to establish liability under its Lanham Act and FDUTPA claims.

   i.   *Unfair Competition under the Lanham Act – Count I*

In Count I, CoronaCide sues Wellness Matrix and Todt for unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The statute provides, in relevant part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

"Section 1125(a) thus creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014). Here, CoronaCide alleges in Count I that Wellness Matrix's and Todt's "use of the CoronaCide™ Trademark and the Defendants' Deceptive CoronaCide Content"[4] in connection with advertising and marketing their goods or service in interstate commerce "made or contributed to the making of false designations of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact" that are "likely to cause confusion, mistake, or to deceive as to the affiliation, connection or association of Defendants with CoronaCide, and/or as to the origin, sponsorship, or approval of Defendants' goods and/or services, in violation of Section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)." Doc. ¶43. Thus, CoronaCide tracks the language of § 1125(a)(1)(A) and references § 1125(a)(1)(A) in Count I. CoronaCide also references this section within the prayer for relief for the claim under Count I. *Id.* at 12–13. As such, the Court construes this claim as a claim for false association under § 1125(a)(1)(A).

---

[4] The Court addresses the defined term "Defendants' Deceptive CoronaCide Content" in more detail in the FDUTPA section.

To state a claim for trademark infringement or unfair competition under the Lanham Act, a plaintiff must plead facts demonstrating that "(1) it has a valid, protectable mark, and (2) [the defendant's] use of the mark is likely to cause confusion, or to cause mistake, or to deceive." *TracFone Wireless, Inc. v. Zip Wireless Prods., Inc.*, 716 F. Supp. 2d 1275, 1283 (N.D. Ga. 2010) (internal quotation marks omitted); *see also Knights Armament Co. v. Optical Sys. Tech., Inc.*, 568 F. Supp. 2d 1369, 1376 (M.D. Fla. 2008) ("Just as for trademark infringement, in order to succeed on a claim for unfair competition under 15 U.S.C. § 1125(a), plaintiff must establish valid ownership of the mark and that the defendant's use of the mark in commerce creates a likelihood of confusion."). "The same facts supporting a claim of trademark infringement support a cause of action for unfair competition." *Island Stone Int'l Ltd. v. Island Stone India Private Ltd.*, No. 6:16-cv-656-PGB-KRS, 2017 WL 5632719, at *4 (M.D. Fla. Nov. 3, 2017), *report and recommendation adopted*, No. 6:16-cv-656-GBC-KRS, 2017 WL 5608939, at *1 (M.D. Fla. Nov. 21, 2017).

"To satisfy the first element of § 43(a)—proof of a valid trademark—a plaintiff need not have a registered mark. We have recognized that 'the use of another's unregistered, *i.e.*, common law, trademark can constitute a violation of § 43(a) where the alleged unregistered trademarks used by the plaintiff are so associated with its goods that the use of the same or similar marks by another company constitutes a false representation that its goods came from the same source.'" *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010) (quoting *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512–13 (11th Cir. 1984)). "However, only those marks that are capable of distinguishing

13

the owner's goods from those of others, *i.e.*, that are sufficiently 'distinctive,' are eligible for federal registration or protection as common law marks under the Lanham Act." *Id.* To that end, the Eleventh Circuit recognizes four categories of distinctiveness, "listed in ascending order of strength":

> (1) generic—marks that suggest the basic nature of the product or service; (2) descriptive—marks that identify the characteristic or quality of a product or service; (3) suggestive—marks that suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive; and (4) arbitrary or fanciful—marks that bear no relationship to the product or service, and the strongest category of trademarks.

*Id.* (internal quotation marks omitted).

And as for the second element, the Eleventh Circuit utilizes the following multifactor test to evaluate confusion:

> (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public.

*Id.* at 774–75.

Here, the Motion for Default Judgment includes a section spanning nine pages entitled "Admitted/Establish Facts," which repeats CoronaCide's allegations from the complaint. Doc. 38 at 6–14. CoronaCide does not argue in this section which factual allegations are sufficiently well-pleaded. Again, only CoronaCide's well-pleaded factual allegations are deemed admitted. In a later section of the Motion for Default

Judgment, CoronaCide argues for entitlement to default judgment against Wellness Matrix and Todt on Count I of the complaint. *Id.* at 20–21. This section fills less than one full page. Citing to several paragraphs from the complaint, CoronaCide argues that "the admitted allegations of the [complaint] establish that Defendants deliberately, intentionally, willfully, and in bad faith used the CoronaCide® trademark; displayed the CoronaCide® trademark on their websites, deceptively and falsely advertised and marketed CoronaCide Test Kits; and altered CoronaCide's marketing materials featuring the CoronaCide® trademark and displayed them on Defendants' websites." *Id.* CoronaCide also argues that the use of the "CoronaCide® trademark in connection with advertising and marketing the purported CoronaCide Test Kits in interstate commerce, made or contributed to the making of false designations of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact, which are likely to cause confusion, mistake, or to deceive as to the origin, sponsorship, or approval of Defendants' goods." *Id.* at 21 (internal quotation marks omitted). Finally, CoronaCide highlights the allegation that CoronaCide has suffered, and continues to suffer, damages resulting from the unfair competition of Wellness Matrix and Todt.[5] *Id.*

---

[5] As explained above, CoronaCide brings the claims against both Wellness Matrix and Todt. CoronaCide alleges, upon information and belief, that Todt "has controlled and directed the actions" of Wellness Matrix, as described in the complaint. Doc. 1 ¶12. In the Motion for Default Judgment, CoronaCide requests that the Court enter default judgment against Wellness Matrix and Todt jointly and severally. Doc. 38 at 2. However, CoronaCide does not seek joint and several liability in the complaint. In the context of trademark infringement under the Lanham Act, both natural persons and corporations may be held liable. *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). "Because of its very

CoronaCide does not expressly argue which allegations constitute well-pleaded factual allegations. Assuming that CoronaCide, by citing these allegations, contends that those allegations serve as well-pleaded factual allegations, the allegations nonetheless fail to address whether CoronaCide has a valid, protectable mark. The cited allegations simply discuss, among other things, the display of CoronaCide's trademark on the Websites and the Websites' display of CoronaCide materials without CoronaCide's trademark. In the Motion for Default Judgment, CoronaCide does not argue, or point to any allegations indicating, that it has a valid, protectable mark. And a review of the complaint, including the attached exhibits, reveals that CoronaCide does not allege that it has a valid, protectable mark. Instead, CoronaCide only refers to its trademark in select areas of the complaint as the "CoronaCide™ Trademark."[6] Doc. 1 ¶¶24, 26–27, 31–32, 34–36, 39, 43–46.

The Court declines to assume that CoronaCide has a valid, protectable mark based on its reference to the trademark as the "CoronaCide™ Trademark." In contrast to other cases in which a plaintiff sought a default judgment, CoronaCide does not allege registration of the mark. *See*, *e.g.*, *BayCare Health Sys. Inc. v. BayCare Health Mgmt. Corp.*, No. 8:18-cv-2380-TPB-JSS, 2020 WL 571261, at *2 (M.D. Fla. Jan. 3, 2020), *report and recommendation adopted*, No. 8:18-cv-2380-TPB-JSS, 2020 WL 468430, at *1 (M.D. Fla. Jan. 29, 2020) ("Here, as to the first element, Plaintiff alleges that it owns

---

nature a corporation can act only through individuals." *Id.* "If an individual actively and knowingly caused the infringement, he is personally liable." *Id.*

[6] With a few exceptions, CoronaCide refers to the trademark as the "CoronaCide® Trademark" in the Motion for Default Judgment. Doc. 38 at 3, 8, 10–14.

the BAYCARE Mark, which Plaintiff registered in the state of Florida in 2015 and federally registered in 2017."); *FSC Franchise Co., LLC v. Express Corporate Apparel, LLC*, No. 8:09-cv-454-SDM-TGW, 2011 WL 1226002, at *4 (M.D. Fla. Feb. 28, 2011), *report and recommendation adopted*, No. 8:09-cv-454-SDM-TGW, 2011 WL 1153840, at *1 (M.D. Fla. Mar. 29, 2011) ("The plaintiff has established that it possesses valid marks by identifying the registration numbers of each mark and providing copies of the marks from the U.S. Patent and Trademark Office's website."). Of course, as highlighted above, CoronaCide need not have a registered mark. But CoronaCide does not supply any allegations or analysis pertaining to any common law trademark, either. Therefore, because the complaint lacks allegations stating that CoronaCide has a valid, protectable mark, CoronaCide fails to state a claim for unfair competition under § 1125(a)(1)(A).[7]

      *ii.     FDUTPA – Count II*

In Count II, CoronaCide sues Wellness Matrix and Todt for violating FDUTPA. FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Fla. Stat. § 501.204(1). FDUTPA defines "trade or commerce" as meaning "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." *Id.*

---

[7] Thus, the Court need not evaluate whether use of the mark by Wellness Matrix and Todt is likely to cause confusion, or to cause mistake, or to deceive.

§ 501.203(8). The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *Id.* § 501.202(2). "FDUTPA applies to private causes of action arising from single unfair or deceptive acts in the conduct of trade or commerce, even if it involves a single party, a single transaction, or a single contract." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003). To state a claim under FDUTPA, a plaintiff must allege: "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)).

Here, in a section that fills less than one full page in the Motion for Default Judgment, CoronaCide argues that it is "entitled to default final judgment against Defendants on Count II" of the complaint. Doc. 38 at 21–22. CoronaCide argues that the "admitted factual allegations" of the complaint establish that Wellness Matrix and Todt "violated FDUTPA through deceptive and unfair trade practices that damaged CoronaCide." *Id.* at 21. CoronaCide highlights only two allegations in the complaint in support. First, citing to paragraph 50, CoronaCide argues that Wellness Matrix and Todt "used the CoronaCide® Trademark and Defendants' Deceptive CoronaCide Content without CoronaCide's authorization and attempted to profit from the purported sale of CoronaCide Test Kits to third parties." *Id.* (internal footnote omitted). The Court reviews paragraph 50 below. Second, CoronaCide points to an

allegation stating that, as a direct result of Wellness Matrix's and Todt's deceptive and unfair practices, CoronaCide has suffered and continues to suffer damages. *Id.* at 21–22.

CoronaCide does not expressly argue which allegations constitute well-pleaded factual allegations. And for the two allegations that CoronaCide does identify, CoronaCide fails to offer any argument as to why those allegations constitute well-pleaded factual allegations. In Count II, CoronaCide alleges that "Defendants' use of the CoronaCide™ Trademark and the Defendants' Deceptive CoronaCide Content" constitutes "deceptive and unfair practices" under FDUTPA. Doc. 1 ¶49. Specifically, CoronaCide alleges, "Defendants' use of the CoronaCide™ Trademark and Defendants' Deceptive CoronaCide Content and attempts to profit from the purported sale of CoronaCide Test Kits to third parties, goes against public policy and are [sic] immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers." *Id.* at ¶50. CoronaCide then concludes by alleging that, as a direct result of "Defendants' deceptive and unfair practices," CoronaCide has suffered and continues to suffer damages. *Id.* at ¶51.

Thus, CoronaCide alleges that the "use of the CoronaCide™ Trademark and Defendants' Deceptive CoronaCide Content" constitutes deceptive *and* unfair practices under FDUTPA. The law distinguishes between deceptive practices and unfair practices under FDUTPA. "'[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'" *Zlotnick v. Premier Sales Grp., Inc.*, 480

19

F.3d 1281, 1284 (11th Cir. 2007) (quoting *PNR*, 842 So. 2d at 777); *see also Angelo v. Parker*, 275 So. 3d 752, 755 (Fla. 1st DCA 2019) (stating that a deceptive practice is a practice that is likely to mislead consumers acting reasonably in the circumstances, to the consumers' detriment). On the other hand, an unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *PNR*, 842 So. 2d at 777 (internal quotation marks omitted).

Here, in alleging the basis for Count II, CoronaCide tracks the definition—nearly verbatim—of an "unfair practice." As such, the Court construes the complaint as alleging that Wellness Matrix and Todt engaged in "unfair . . . practices in the conduct of any trade or commerce," Fla. Stat. § 501.204(1), by using "the CoronaCide™ Trademark and the Defendants' Deceptive CoronaCide Content" and attempting to profit from the sale of CoronaCide Test Kits to third parties, Doc. 1 ¶50. But the term "Defendants' Deceptive CoronaCide Content" is unclear. Although CoronaCide defines "Defendants' Deceptive CoronaCide Content" as "the elements listed in paragraphs 22 through 24," paragraphs 22 through 24 do not list any "elements"; rather, those allegations merely state that CoronaCide rejected the purchase order for the CoronaCide Test Kits, that Wellness Matrix began offering the CoronaCide Test Kits to the public through the Websites, and that the Websites prominently displayed the CoronaCide™ Trademark without CoronaCide's authorization or consent. *Id.* at ¶¶22–24, 28. Thus, CoronaCide does not plead sufficient factual content to allow the Court to draw the reasonable inference that

Wellness Matrix and Todt engaged in unfair practices in the conduct of trade or commerce by using the "Defendants' Deceptive CoronaCide Content." And to the extent that CoronaCide relies upon Wellness Matrix's and Todt's use of the CoronaCide™ Trademark, the Court notes that, although the analysis above focuses on the first element of the unfair competition claim, the Eleventh Circuit has held— albeit at summary judgment—that a plaintiff's failure to establish a likelihood of confusion under a Lanham Act claim "extinguishe[d]" the plaintiff's FDUTPA claim. *Custom Mfg. & Engr., Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 652 (11th Cir. 2007).

Ultimately, even if CoronaCide plausibly alleges the first two elements of FDUTPA, CoronaCide fails to allege actual damages. FDUTPA provides, "In an action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court courts . . . ." Fla. Stat. § 501.211(2). "In the context of FDUTPA, 'actual damages' are defined as 'the difference in market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.'" *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180 (Fla. 3d DCA 2010) (quoting *Rollins*, 454 So. 2d at 585). "This is because '[t]he act is intended to protect a consumer from unfair or deceptive acts or practices which diminish the value or worth of the goods or services purchased by the consumer.'" *Id.* (alteration in original) (quoting *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. 1st DCA 1985)). Under FDUTPA, "actual damages" does not include special or consequential damages. *Id.*

21

Here, CoronaCide fails to allege actual damages. Under Count II, CoronaCide alleges only that it has suffered, and continues to suffer, "damages" as a result of "Defendants' deceptive and unfair practices." Doc. 1 ¶51. A review of the complaint's factual allegations reveals that CoronaCide alleges only that "CoronaCide has suffered irreparable injury to its business including harm to its goodwill and reputation, and damages," as a "direct and proximate result of Defendants' conduct." *Id.* at ¶52. As highlighted above, "actual damages" under FDUTPA are "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Rodriguez*, 38 So. 3d at 180. Thus, CoronaCide does not plausibly allege "actual damages" under FDUTPA. As such, CoronaCide fails to state a claim under FDUTPA.

## IV.   CONCLUSION

Because CoronaCide fails to state its claims and a motion for default judgment cannot stand on a complaint that fails to state a claim, the Court will deny the Motion for Default Judgment and dismiss the claims. However, the Court must determine whether to allow CoronaCide leave to amend. "[A] district court's discretion to dismiss a complaint without leave to amend is 'severely restrict[ed]' by Fed. R. Civ. P. 15(a), which directs that leave to amend 'shall be freely given when justice so requires.'" *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988) (quoting *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 597 (5th Cir. 1981)). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive

on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)). Nothing here suggests undue delay, bad faith, or dilatory motive on the part of Plaintiff, nor that Wellness Matrix and Todt will be unduly prejudiced if the Court allows CoronaCide the opportunity to amend the complaint to cure the deficiencies. Also, it does not appear that amendment would be futile. Therefore, the Court will allow CoronaCide the opportunity to file an amended complaint that cures the identified deficiencies.

Accordingly, it is hereby **ORDERED**:

1. Plaintiff's Motion for Entry of Default Final Judgment Against Defendants Wellness Matrix Group, Inc. and George Todt (Doc. 38) is **DENIED**.

2. Count I and Count II of CoronaCide, LLC's Verified Complaint and Demand for Jury Trial (Doc. 1) are **DISMISSED**, **without prejudice**, **for failure to state a claim**.

3. The Court grants CoronaCide leave to file an amended complaint curing the deficiencies discussed in this order within **FOURTEEN (14) DAYS** of the date of this Order. CoronaCide must serve any amended complaint in accordance with the Federal Rules of Civil Procedure. **Failure to file an**

**amended complaint within the time prescribed will result in the dismissal of this action, without prejudice, without further notice**.

**DONE AND ORDERED** in Tampa, Florida on September 22, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies to: Counsel of Record and Unrepresented Parties, if any